Jones, Chief Judge,
delivered the opinion of the court:
Plaintiff sues for the balance it claims is due by the defendant in the sum of $1,719.38 as payment for 875 pairs of trousers delivered to defendant under a written contract entered into on July 26,1955.
Defendant admits that this amount is due under that particular contract, but it claims an offset in the total sum *278 of $7,608.02, or a net balance of $5,883.64, which it claims plaintiff owes on an earlier contract.
The entire issue revolves around the disposition of issues incident to the earlier contract, dated February 20, 1953, to which our discussion will be limited.
Under the terms of the contract in issue plaintiff agreed to manufacture 500,005 pairs of enlisted men’s white trousers from Government-furnished material for the Department of the Navy. The plaintiff was to submit weekly “cutting reports” and a “final cutting report”, and on completion of performance was required to certify the quantity of Government-furnished property received, the quantity consumed in completion of end items, and the quantity remaining on hand, broken down as between usable Government-furnished property and resulting scrap. It was further agreed that plaintiff would reimburse the Government for scrap at the price of 11 cents per pound, whereupon the scrap would become the property of the plaintiff.
The plaintiff completed the contract in the latter part of 1953, made a report of the amount of cloth used, and was paid the contract price for the trousers. Plaintiff in turn paid the defendant for 56,397 pounds of scrap, which it had reported as the amount of resulting scrap.
There is not an exact agreement as to dates, but both parties agree that the contract price was paid for the trousers, and the contract price was paid by plaintiff to defendant for the amount of scrap it reported. It is agreed that all of this was completed, the contract accepted, and payments made during the year 1954.
On May 17, 1955, the contracting officer advised plaintiff by letter that an analysis of the scrap generated .under the contract in question showed that approximately 63,058.12 pounds of cloth remained unaccounted for; that after crediting plaintiff with the payment for the 56,397 pounds of scrap for which it had paid, there remained a balance of $6,203.67 due the Government and that plaintiff was required to reimburse the Government, and that “reimbursement must be by means of a check made payable to the Treasurer of the United States by June 15,1955.”
*279 On June 8, 1955, the plaintiff replied that its records showed that the contract was satisfactorily completed and certificate made in early 1954, with all Government-furnished property being reported either in the form of finished garments, scrap, piece goods or rejected end items; that acceptance, settlement and reimbursement had been made a short time thereafter; and that it could not understand why there was a demand for further reimbursement under the contract after completion, acceptance and full settlement long before.
On July 15, 1955, the contracting officer wrote another letter to the plaintiff setting out the Government’s formula for determining the amount due, as follows:
The total weight of all material shipped, less total weight of any material returned, less the total weight of all garments cut, is equal to the total weight of scrap generated.
It was asserted that under this formula the plaintiff owed the defendant for an additional 68,058.12 pounds of scrap at 11 cents per pound. Payment was demanded by July 29, 1955.
The plaintiff replied on July 26,1955, saying that in view of the defendant’s research on this contract it must locate, study, review and analyze records which were 2 . years old, and review inventories, cutting records, shipments, etc. It asked for a 30-day extension to make the study. On August 30, 1955, plaintiff advised that it had employed counsel and asked for an additional 10 days. On September 13, the attorney then requested the contracting officer to decide the disputes involved. The attorney asserted that the Government conclusions were based upon an inference built upon a number of other inferences and had no logical or factual foundation. Plaintiff asked for a finding of fact. It also spelled out the method which plaintiff had used and stated that if the contracting officer did not find the facts as alleged by the Keystone Coat & Apron Mfg. Corp., it was the intention of that corporation to file an appeal before the Armed Services Board of Contract Appeals.
On October 24, 1955, the contracting officer wrote a letter stating that a decision had been made by him on July 15, *280 1955, and again demanding payment of the balance claimed by the Government.
Article 12 of the contract contains the usual disputes provision concerning decisions on questions of fact arising under the contract to be decided by the contracting officer in event of failure to agree, with a right of appeal within 80 days after receipt of a copy of the decision.
The case was appealed, and the Board of Contract Appeals, after reciting the series of letters, dismissed the appeal on the ground that the letter of July 15, 1955, was a decision and that the appeal, not having been made within 30 days from that date, was untimely.
The plaintiff asserts, first, that the contract was completed in the latter part of 1953, that full settlement was made and the terms of payment accepted by the defendant, that full payment was made both ways on April 8, 1954, and that the contracting officer therefore lost any authority to make a decision on disputed facts some 18 months after the delivery of the trousers and a full year after final payment and acceptance.
Plaintiff also contends that, if it is found that the contracting officer still had the power after completion of the contract to make a decision on disputed questions of fact, the letter of July 15,1955, did not constitute such a decision, but was simply a letter demanding payment on the Government’s own terms.
Plaintiff also contends that
Since the contracting officer’s letter of July 15, 1955, was not characterized by the contracting officer as a “decision” or as a “finding of fact” under the Disputes article of the contract, and did not notify contractor of its right to appeal, such letter did not constitute a “decision” or a ‘binding of fact” under the Disputes article of the contract.
The plaintiff also cites Navy Procurement Directive 5-100.7, which is as follows:
14. The following procedure for the disposition of disputes concerning questions of fact arising under contracts containing the provisions set forth in paragraph 11 above, or provisions similar thereto, must be followed:
*281 (a) Whenever any such dispute arises, the contracting officer shall request the contractor to furnish a full statement of the pertinent facts and the reason in support of the contractor’s contention, with reference to the contract provisions relied upon in support of such contention.
(b) The contracting officer shall in each instance decide the dispute and furnish directly to the contractor a statement in writing of his “decision”, together with “findings of fact”. The decision of the contracting officer must not, however, be in conflict with any provision of the contract. Such “decision” and “findings of fact” shall be accompanied by a copy of the rules of the Board of Contract Appeals.
The plaintiff complains that the letter of July 15,1955, was not captioned or otherwise designated as a decision or as a finding of fact and was not clear enough to apprise plaintiff that it constituted “findings of fact” and a “decision” under the disputes articles of the contract and the Navy regulations quoted above. It also contends that the Navy violated the regulations quoted above by failing to furnish plaintiff with a copy of the rules of the Armed Services Board of Contract Appeals.
The defendant just as positively asserts that the contracting officer had a right, notwithstanding the completion of the contract, to decide disputed facts; that the letter of July 15, 1955, under the peculiar facts of this case rises to the dignity of a disputes decision under the contract and Navy regulations. In the circumstances disclosed here it amounts to a demand for payment on the ground that plaintiff had not properly accounted for the amount of scrap to be paid for. The first letter written by the contracting officer in May 1955 was practically a demand for payment, as was the letter of July 15, 1955.
This can hardly be classed as a dispute. We have always thought it takes two to make a dispute. But this was Tini-lateral. Months after settlement under the contract the contracting officer decided the Government was due some money and on May 25,1955, sent plaintiff a statement that it owed the Government $6,203.67, and demanded payment. Plaintiff was not asked to explain. It was told to pay. The con *282 tracting officer did not ask for plaintiff’s position so that a dispute might arise. He merely took a shillalah and struck him down.
Then, when plaintiff said he did not understand, the contracting officer on July 15, 1955, deigned to disclose his formula, but still demanded payment. He did give plaintiff an extension of time to look over its own books. But nowhere did he indicate that he would listen, or that it was open to dispute. As they say in the range country, he did not give plaintiff a chance to establish his brand. In the peculiar facts of this case we do not think the letter of July 15, 1955, was sufficient under the contract and Naval regulations to apprise plaintiff that it was a final decision, including findings of fact and notice under the disputes clause.
Before a final decision is made, however, we feel that certain additional facts should be disclosed. The defendant’s motion for summary judgment is overruled and the case is returned to the trial commissioner for the purpose of hearing evidence or securing a stipulation of the parties on the issues, including the following questions:
1. How and in what way were the original bolts of cloth weighed, or their contents determined ?
2. Were all the bolts uniform in weight and amount of cloth?
3. What is the custom, if one prevailed in the trade at that time, of measuring the amount of cloth received and used — when cloth was furnished to the manufacturer — and how, in such circumstances, was the amount of scrap to be returned customarily defined and determined?
4. Were any new facts discovered or found by the defendant after the completion of the contract in question that were not available to its authorized representatives at the time of the settlement in 1954 ?
Duefee, Judge; Laeamoee, Judge; MaddeN, Judge; and Whitakee, Judge, concur.