**MERRITT–CHAPMAN & SCOTT CORPORATION and Magaw Electric Company**

v.

**The UNITED STATES.**

**No. 25–70.**

United States Court of Claims.
April 14, 1972.

George J. Laikin, Milwaukee, Wis., attorney of record, for plaintiffs. Laikin, Swietlik & Laikin, Milwaukee, Wis., of counsel.

Mark R. Wiener, Washington, D. C., with whom was Asst. Atty. Gen. L. Patrick Gray, III, for defendant. R. W. Koskinen, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and DAVIS, COLLINS, SKELTON, NICHOLS, KASHIWA and KUNZIG, Judges.

## ON PLAINTIFFS' MOTION AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

PER CURIAM:

This case was referred to Trial Commissioner Louis Spector with directions to prepare and file his opinion on the issues of plaintiffs' motion and defendant's cross-motion for summary judgment under the order of reference and Rule 166(c). The commissioner has done so in an opinion and report filed on September 24, 1971, wherein such facts as are necessary to the opinion are set forth. A request for review of the commissioner's opinion and recommendation by the court was filed by the plaintiff Magaw Electric Company and the case has been submitted to the court on the briefs of the parties and oral argument of counsel. Since the court agrees with the opinion and recommended conclusion of the trial commissioner, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case. Accordingly, it is concluded that plaintiffs are not entitled to recover; plaintiffs' motion for summary judgment is denied; defendant's cross-motion for summary judgment is granted; and the petition is dismissed.

## OPINION OF COMMISSIONER

SPECTOR, Commissioner:

This contract claim in the amount of $367,613 grows out of an agreement between the United States and plaintiff Merritt-Chapman & Scott Corporation (hereinafter Merritt-Chapman, or the contractor), for the construction by the latter of a 1,264 bed General, Medical and Surgical Hospital and Regional Office Medical Building at Wood, Wisconsin. The contract is dated June 4, 1962, was in the original amount of $23,418,-195, and was scheduled for completion December 6, 1964.

Plaintiff Magaw Electric Company (hereinafter Magaw), was Merritt-Chapman's electrical subcontractor and is the party whose economic interest is actually at stake in this claim. It appears in the caption of this case as a plaintiff solely by reason of an authorization by Merritt-Chapman to press the claim in Merritt-Chapman's name. Under long-established principles of contract privity, the suit can be regarded here solely as one by Merritt-Chapman, with the recognition that it is brought for and on behalf of Magaw.[1]

The claim results from a large change in the contract plans and specifications. Originally they called for air-conditioning in only a few critical areas of the project, such as operating suites. In May 1963, after construction was well advanced, defendant, acting through the Veterans' Administration, decided however to issue a change order[2] requiring the whole building to be air-conditioned; and it was ordered that the contractor proceed with the new work on August 2, 1963, deferring the adjustment of contract price and time until later. As ultimately negotiated, formal Change Order (designated "P") of August 27, 1964, provided for an increase in contract price of $3,645,984 and a time extension of 210 days. Magaw claims that it incurred additional expense not compensated by the change order of $367,613. The claim, presented in the name of Merritt-Chapman, was denied by the contracting officer August 10, 1965, on the grounds that it was fully embraced within the aforementioned Change Order P, which therefore constituted an accord and satisfaction thereon.

---

1. See Owens-Corning Fiberglas Corp. v. United States, 419 F.2d 439, 453 et seq., 190 Ct.Cl. 211, 236 et seq. (1969).

2. Under General Provision 3 "Changes."

An appeal from that decision[3] was heard by the Contract Appeals Board representing the head of the Veterans' Administration, and denied by decision of that board dated November 30, 1966.[4] Review of the board's decision is herein sought by measurement against the standards of review set forth in the contract "Disputes" article.[5]

It was contractor's contention before the board that certain delay, "impact" and other costs in connection with the electrical work were reserved for future consideration, and therefore not wrapped up in Change Order P. The issues before the board were therefore essentially factual in nature, treating as they did with the circumstances surrounding the negotiation of that sizable change order to determine the intent of the parties with respect thereto. The board's opinion deals exhaustively with these factual issues.

In summary, the board found a recognition by the parties during negotiations that overall contract costs would be substantially affected by an air-conditioning change of this magnitude, occurring as it did in the midst of the original construction plan. When the change order was ultimately executed, some delays, suspensions and stop orders had in fact already taken place, and were therefore factors considered in the negotiations, both as historical costs already incurred, and as factors to be considered in "forward-pricing" the work remaining to be performed. It was viewed in partial effect as a "remodeling" of construction already performed, and in addition to the time extension granted, increased overhead and similar cost factors were taken into consideration.

The wording of Change Order P was itself regarded as significant by the board in its decision. In pertinent part the change order provided:

> \* \* \* [T]his includes necessary modifications of other contract work and construction of new Building No. 113 and related facilities; all in accordance with your proposal X–253 dated June 25, 1964. [Emphasis supplied.]

Change Order P is not a bilateral instrument, having been signed (as contemplated by the "Changes" provision) only by the contracting officer. It is, however, relied upon by the board as an accord and satisfaction because it is in full agreement with the second of two proposals which had previously been solicited from contractor. Therefore Merritt-Chapman's offer, and the acceptance thereof by the change order, are deemed to constitute an accord.

In further explanation, contractor's first proposal of February 5, 1964, had been in the amount of $4,248,177. That proposal is detailed and comprehensive, and clearly embraces the cost of overall suspension and delays resulting from the change and the stop orders. It sought an extension of time of 210 days as well. Because that proposal was almost $2 million in excess of an estimate prepared for defendant by an architect-engineering firm, a long series of conferences and negotiations ensued, resulting in the aforementioned second proposal of June 25, 1964. That proposal was in the amount of $3,645,984, the precise amount ultimately reflected in Change Order P. It was offered as a reduction in the original proposal following extensive negotiations. It, too, was detailed and demonstrated, inter alia, a series of items (including electrical) for "INCREASED COST OF PERFORMANCE OF THE PROJECT WORK RESULTING FROM THE SUSPENSION."

There were no words of exception or reservation in either contractor's propos-

---

3. Pursuant to General Provision 6 "Disputes."

4. Affirmed on appellant's motion for reconsideration, February 21, 1967.

5. Note 3 supra. See United States v. Carlo Bianchi & Co., 373 U.S. 709, 83 S.Ct. 1409, 10 L.Ed.2d 652 (1963).

al or the responsive change order, and the board in its opinion examines at great length the negotiations preceding acceptance of the second proposal, for any evidence of such exceptions or reservations. Subcontractor representatives (including Magaw), were present at these negotiations.

Magaw relies specifically on a conference of April 23–25, 1964, where it alleges that reservations were expressed militating against the board's finding that Change Order P constituted an accord and satisfaction as to all costs.

The board found, as a matter of fact, that there were serious misunderstandings at that conference as to the elements embraced within the Magaw figures, and that the testimony at the board's hearing was in conflict on this point. It was essentially contractor's position that with respect to the electrical subcontractor, the figures discussed related only to delay and loss of productivity suffered up to the date of that conference, and reserved out all future costs of a similar nature. Magaw's present claim appears to be made up of the amounts by which its then estimate fell short of its present total cost as determined after completion.

The board comprehensively reviews the conflicting testimony relating to that conference, and concludes that no reservations were intended by the parties. It relies particularly on the final negotiations June 18–19, 1964, between plaintiff Merritt-Chapman (the only contractor with whom defendant is in privity), and the contracting officer, and finds no evidence that anything was said that might in any way indicate an understanding that this was a partial settlement; or that future claims on this account might be filed in the course of continuing performance. It relies particularly upon the following testimony of the Government's contracting officer:

Yes, this was discussed on several occasions and I believe it fair to say that there was complete agreement between the general contractor and the Government as represented by myself, and with the knowledge of our representatives at the job, that the proposal, once it had been made in an acceptable form and was accepted by the Government would conclude the matter, there would be no further changes and no additions or any other reimbursement made.

Based on its findings of fact, and relying on this court's definition of an accord and satisfaction in Brock & Blevins Co. v. United States, 343 F.2d 951, 952, 170 Ct.Cl. 52, 54 (1965), the board finds that all of the elements of an accord are present. It concludes that "both parties tried to fix a firm price on the contract price increase attributable to the change and the delays and difficulties associated with it, and that the subject of their negotiation was a complete settlement of the price which would thereafter be binding on them."

It places no weight on the present assertions of Magaw to the contrary, because the electrical subcontractor was not a party to the contract, and its participation in the preliminary negotiations would only have a bearing upon the intent of the plaintiff Merritt-Chapman. Further relying on the decision of this court in Cannon Construction Co. v. United States, 319 F.2d 173, 177, 162 Ct.Cl. 94, 101 (1963), the board concludes:

* * * On a settlement of such broad scope as that contemplated by the contracting parties in this case, any reservation of particular items for future claim and payment should be clear and explicit, and we find upon the evidence of record that not only was there no such reservation by the general contractor but there is an absence of any evidence that the general contractor actually intended to limit the scope of the settlement by reservation of possible future revival of claim. If the general contractor's representative was unaware, as he

well might have been, of the legal effect of his agreement with the Contracting Officer on claims that might be reasserted by the subcontractor in the future, it is of no consequence. It is well-settled that mere ignorance of legal consequence does not prevent one's voluntary acts from having such consequences. [Footnotes omitted.]

Finally, the board considered contractor's argument that the present claim includes costs which were incurred in point of time after the issuance of Change Order P, and for that reason should still be payable under the "Changes" and "Suspension of Work" clauses of the contract, after *de novo* consideration under those clauses. However, it concludes that "the settlement consummated by Change Order P was a settlement based on forward-pricing estimates, including future costs flowing from or related to the changes previously ordered and the stop-orders and delays previously suffered; and we find in the record no showing that the claims now asserted are from after-arising causes which would, independently and subsequently, create new rights under those clauses."

The board makes one additional observation in its decision on Merritt-Chapman's motion for reconsideration.[6] It acknowledges that it received and took cognizance of testimony concerning the private price settlement negotiations between plaintiff Merritt-Chapman and Magaw, but emphasizes that its decision does not "purport to make, any determination of the legal effects, as between themselves, of any settlement agreement which may have been negotiated between the prime contractor and the electrical subcontractor."

The board's determination that an accord and satisfaction resulted from the foregoing factual events, is essentially a conclusion on a question of law, and is therefore, not final on this judicial review.[7] It is, however, correct as a matter of law and so determined in this proceeding.[8] Moreover, it is a conclusion of law which flows inevitably from the factual determinations on the negotiations leading to Change Order P, as set forth above in some detail. These factual determinations of the board are final unless "fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith or * * * not supported by substantial evidence."[9] They do not fail those tests.

■ Many of the essential factual determinations are undisputed. As to those that are in dispute, the board's resolution of any conflict in testimony is supported by substantial evidence in the board record. It follows that the board's decision to the effect that Merritt-Chapman is barred from further claim by the described accord and satisfaction is correct, is entitled to finality, and will not be disturbed.

One further issue requires treatment herein. It arises from the fact that the plaintiffs urge a quite different theory of relief before this court than was pressed before the board. Their present theory, briefly summarized, is that Change Order P, in addition to its provision for a price increase of $3,645,984, granted a time extension of 210 days for completion of the additional work; that the services for which plaintiff Magaw

---

6. *See* note 4 *supra.*

7. *See* note 3 *supra*, the provision therein cited reading in part as follows:

    "(b) This Disputes clause does not preclude consideration of questions of law in connection with decisions provided for in paragraph (a) above. Nothing in this contract, however, shall be construed as making final the decision of any administrative official, representative, or board on a question of law." *See also* note 5 *supra.*

8. In addition to cases cited in the board opinion, *see* Langoma Indus., Inc. v. United States, 135 F.Supp. 282, 133 Ct. Cl. 248 (1955).

9. Notes 3 and 7 *supra.*

now makes claim "were largely performed after the 210-day extension contained in Change Order P had expired, and that they were worth the amount therein set forth." Magaw continues:

No place in the record, or in the Board's opinion, is any attention or recognition given to the fact that Magaw Electric's claim was largely related to the period after the extension of 210 days had expired. There was a failure to grasp the fact that even if there had been an accord and satisfaction, a critical element of the accord and satisfaction was the 210 day extension period, and that anything which was done after the 210 day period was outside of the scope of the alleged accord and satisfaction.

■ This is a novel theory, but it is without merit. Ordinarily, if a contractor fails to complete an additional increment of work within the additional time stipulated in a change order (which has been found herein to constitute an accord), that failure would constitute the basis for a claim by the Government for damages; or even serve as a basis for termination of the contract for default. It is virtually unprecedented to suggest that the contractor's failure to complete that work within the time agreed upon, supports a claim by the contractor for costs incurred beyond the time allowed.

Plaintiff Magaw also argues that it was not a party to the accord and satisfaction, an argument dealt with at the beginning of this opinion where it is explained that under long-established principles of contract privity, this suit can be regarded solely as one by the plaintiff Merritt-Chapman.[10]

All of the foregoing considered, it is concluded that plaintiffs are not entitled to recover. Plaintiffs' motion for summary judgment is denied, defendant's cross-motion for summary judgment is granted, and the petition is dismissed.