518

**HOFFMAN CONSTRUCTION CO.**

v.

**The UNITED STATES.**

No. 118–84C.

United States Claims Court.

March 13, 1985.

David R. Trachtenberg, Portland, Or., for plaintiff.

Lynn J. Bush, Washington, D.C., with whom was Acting Asst. Atty. Gen., Richard K. Willard, Washington, D.C., for defendant; Bernadine Harrity, Veterans Admin., Washington, D.C., of counsel.

## OPINION

LYDON, Judge:

This direct access contract case comes before the court on defendant's motion for summary judgment and plaintiff's opposition thereto. Defendant maintains, and plaintiff contests, that no genuine issue of material fact exists and that defendant is entitled to a judgment as a matter of law. While plaintiff was performing the work set out in the contract at issue, defendant issued several change orders. Plaintiff completed the change order work and submitted cost proposals thereon. The parties ostensibly negotiated over the cost proposals and agreed on ultimate amounts set out in final change orders. After settling these cost disputes, plaintiff filed a certified claim to the contracting officer for

interest ($105,499) based on what plaintiff perceived to be unreasonable delays in change order payments. The contracting officer awarded plaintiff $20,314 in interest which plaintiff considers insufficient. Subsequently, plaintiff filed this action pursuant to the disputes provision of its contract with defendant and the Contract Disputes Act of 1978, 41 U.S.C. § 609(a)(1) (Supp. 1984) (CDA).

The issue presented by defendant's motion for summary judgment is whether or not plaintiff is entitled to an award of interest under either the Disputes Clause of the contract at issue or the CDA. Defendant maintains that absent an underlying claim submitted to the contracting officer and a decision thereon as provided in 41 U.S.C. § 605(a), the contracting officer lacks statutory authority to award interest pursuant to 41 U.S.C. § 611 or under the Disputes Clause of plaintiff's contract which was drafted with terms parallel to section 611 of the CDA. Plaintiff concedes that an underlying claim must exist for its interest claim but maintains that the Veterans Administration's disputing of plaintiff's cost proposals gave rise to a "claim" within the purview of the Contract Disputes Act and the Disputes Clause of its contract. Accordingly, plaintiff contends that it is entitled to interest for the periods of unreasonable delay in the payment by defendant of additional costs created by certain change orders. After a careful review of the submissions of both parties, the applicable statutes and pertinent case law, oral argument having been waived by the parties, the court grants defendant's motion for summary judgment.

## I.

On September 30, 1980, plaintiff entered into a contract (Contract No. V101C–843, Phase 2B, Project No. 663–014) with defendant for construction work on a hospital in Seattle, Washington.[1] During the course of construction, defendant issued

---

**1.** Plaintiff contracted to perform work on the superstructure of an addition to the hospital including excavation, construction of footings, foundations, steel structure, floors and roofs, installation of a drainage system and site grading.

several change orders [2] directing plaintiff to perform additional work. Plaintiff submitted cost proposals on these various changes. These cost proposals were thereafter negotiated by the parties. However, plaintiff continued to perform the changes and defendant funded said changes with progress payments based upon its internally generated budget amounts. It is uncontradicted that these progress payments turned out to be insufficient to meet some of the actual costs as incurred by plaintiff in performing the requested changes.

On at least two occasions during construction plaintiff wrote to Charles Pressley, Senior Resident Engineer, Veterans Administration, to inform him that the progress payments that plaintiff was receiving for the change order work were insufficient to cover the actual costs then being incurred by plaintiff. In those letters plaintiff was requesting increased monthly payments to meet its increased costs so that it was not required to finance initially the work itself. Apparently, there were other instances in which plaintiff informed defendant that its actual or projected costs were exceeding the progress payments allocated for the change orders.

It appears that after the work was completed and plaintiff ascertained its actual costs it determined that the change orders had been substantially "underfunded" and thus plaintiff determined that it had been underpaid. In a letter dated April 22, 1982, plaintiff submitted a chart outlining the remaining items over which there was a cost dispute. Plaintiff requested a meeting at which such items could be resolved so that the contract could be closed out. The final item on the submitted chart asserted that interest was due plaintiff ($82,038) based upon the following reasoning: "The VA has been unreasonably slow in reviewing and approving proposals for and in paying for change order work Hoffman [plaintiff] is entitled to interest payments

as compensation for the VA's failure to pay for change order work in a timely manner." Plaintiff initially calculated the interest amount of $82,038 in a worksheet dated January 29, 1982, which was submitted to defendant at a February 9, 1982, meeting.

All disputes concerning final dollar amounts for all the change order work were resolved, final change orders were entered into and plaintiff was paid. However, defendant refused to pay the above cited interest claim. Defendant, in a letter dated May 13, 1982, gave the following reason for denying plaintiff's interest demand:

10. Interest on Change Order Payments—Proceed Orders have been issued to provide funds for changes. As long as there are reasonable differences of opinions as to some of the costs, I do not think you would be due any interest on the unresolved balance. Interest normally does not start until there is a dispute and the matter is before the Appeals Board.

On February 9, 1983, plaintiff submitted a "formal change order request in the amount of $92,186 * * *" to the contracting officer. Said claim included tables with interest calculations and plaintiff also enclosed a legal argument in support of its interest claim. On March 2, 1983, the contracting officer requested plaintiff to certify its claim due to the fact that plaintiff's claim exceeded $50,000. *See* 41 U.S.C. § 605(c)(1). By letter dated March 14, 1983, plaintiff accordingly certified its claim. Plaintiff subsequently revised its interest claim upward to $105,449 in a letter dated August 8, 1983.

On January 11, 1984, the contracting officer rendered his final decision awarding plaintiff $20,314 in interest. Plaintiff subsequently filed this action in this court pursuant to the direct access provision of the CDA. 41 U.S.C. § 609(a)(1). Plaintiff

---

**2.** Both parties refer to such initial change orders as proceed orders. In fact, two types of proceed orders are referenced; central office proceed orders (COPO), and field proceed orders (FPO). The court assumes that such proceed orders are essentially change orders though they should be distinguished from final change orders (referred to as central office change orders (COCO)) which both parties enter into establishing the ultimate payment.

asserts that the contracting officer's decision is erroneous and that it is entitled to the $105,449 in interest it claimed before the contracting officer, which would include the $20,314 already awarded to it.[3]

## II.

### A.

In its motion for summary judgment, defendant argues that, according to the CDA, absent an underlying quantum claim the contracting officer has no authority to enter an interest award. Defendant relies on the plain language of the CDA to support its argument. Section 611 of the CDA states in pertinent part:

Interest on amounts found due contractors *on claims* shall be paid to the contractor from the date the contracting officer *receives the claim pursuant to section 605(a) of this title from the contractor until payment thereof.* [Emphasis added.]

Section 605(a) of the CDA states in relevant part:

*All claims by a contractor against the government* relating to a contract *shall be in writing and shall be submitted to the contracting officer for decision.* [Emphasis added.]

■ Based on this language, an underlying claim is a prerequisite to an interest award. *See Esprit Corp. v. United States,* 6 Cl.Ct. 546, 548 (1984), *appeal docketed,* No. 85–996 (Fed.Cir. Jan. 8, 1985) (demand for interest alone is not a claim under the CDA); *Nab-Lord Assoc's v. United States,* 230 Ct.Cl. 694, 700, 682 F.2d 940, 944 (1982). *See also B & A Electric Co.,* 85–1 BCA ¶ 17,781 at 88,808 (1985). There is no provision in the CDA which allows a contracting officer to award interest without an underlying claim on which to base such an award. Plaintiff does not dispute this proposition. Defendant maintains in this case that plaintiff never submitted the requisite claim to the contracting officer on

the issue of quantum pursuant to 41 U.S.C. § 605(a). Absent such an underlying claim, defendant asserts, plaintiff's claim for interest is of the nature intended neither by 41 U.S.C. 611 nor by the contract provisions at issue in this case which provide for an interest award.

Plaintiff, in countering defendant's argument, initially admits that it must have an underlying claim upon which to base its interest claim. Plaintiff, however, argues that it has a claim as required by the CDA or the language of plaintiff's contract with defendant. Plaintiff asserts that when defendant disputed plaintiff's cost proposals, submitted in response to the change orders, a claim arose as envisioned by the CDA. Plaintiff argues that defendant should not be able to declare that no dispute exists, and presumably no claim, just because defendant considers the parties as being in a negotiating posture.

Plaintiff also maintains that Article 6 (Disputes Clause) of its contract with defendant also supports plaintiff's contention that it has an underlying claim. Article 6(c)(ii) states:

A voucher, invoice or request for payment that is not in dispute when submitted, is not a claim for the purposes of the Act. However, where such submission is subsequently not acted upon in a reasonable time, or disputed either as to liability or amount, it may be converted to a claim pursuant to the Act.

Based on this provision, plaintiff asserts that defendant's failure to act upon plaintiff's request for increased change order payments within a reasonable time converted plaintiff's requests into a claim. With such an underlying claim, plaintiff argues, it is entitled to an interest award pursuant to 41 U.S.C. § 611.

■ In considering the arguments of both parties, it is prudent for the court at the outset to note that it is working within the confines of the well-established rule that awards of interest against the govern-

---

**3.** Based on plaintiff's complaint, the court surmises that plaintiff has not yet received the

$20,314 awarded by the contracting officer.

ment must be expressly allowed and strictly construed. *See Fidelity Construction Co. v. United States,* 700 F.2d 1379, 1383 (Fed.Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 97, 78 L.Ed.2d 103. It is also the rule that a court must give meaning to every word of a statute. *Ruhnau-Evans-Ruhnau Assoc's v. United States,* 3 Cl.Ct. 217, 218 (1983) (citing 2A *Sutherland Statutory Construction* 63 (C. Sands 4th ed. 1972)). Therefore, given these two well-established rules of law, "this court is particularly hesitant to disregard statutory language that limits the recovery of interest from the government." *Ruhnau-Evans-Ruhnau v. United States, supra,* 3 Cl.Ct. at 218 (court construed 41 U.S.C. § 611). It is in this context that the court considers the arguments of the parties.

■ Plaintiff first argues that when defendant disputed plaintiff's cost proposals on the change orders a claim arose. The court recognizes that in order to have a legitimate claim, a dispute must exist. *See Esprit Corp. v. United States, supra,* 6 Cl.Ct. at 548–49. *See also generally Keystone Coat & Apron Mfg. Corp. v. United States,* 150 Ct.Cl. 277 (1960). Once it is established that a dispute exists then plaintiff has a right to bring a claim. The problem in this case is that plaintiff never submitted a claim on the underlying cost matters related to the change orders to the contracting officer as required by 41 U.S.C. § 605 or Article 6(c)(iii) (Disputes Clause) of plaintiff's contract with defendant.[4]

Section 611 of the CDA states that interest begins to run from the date that the contracting officer receives a claim. Section 605(a) requires that "[a]ll claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision. * * * " Plaintiff apparently never submitted such a claim concerning its dispute with defendant over the proper

payment for the costs incurred in performing the change orders. Such disputes were settled by defendant and plaintiff without any claim being filed. The only claim submitted by plaintiff to the contracting officer was for an interest award based on defendant's delay in paying plaintiff.

Plaintiff's second theory for establishing the requisite underlying claim suffers from the same flaw as its first theory. Plaintiff's second argument is based on the Disputes Clause of its contract with defendant. Article 6(c)(ii) of the contract allows the permissible conversion of a request for payment into a claim if such a request is not acted on in a reasonable time. Essentially what Article 6(c)(ii) does is to create a dispute where none may actually exist based on one party's unreasonable delay. As stated above, one needs a dispute in order to assert a claim. Article 6(c)(ii) creates such a dispute. However, even assuming that such unreasonable delay occurred, section 605(a) of the CDA requires that a claim must be in writing and must be submitted to the contracting officer for a decision. Absent such a claim, 41 U.S.C. § 611 would not allow the award of interest. *See Esprit Corp. v. United States, supra,* 6 Cl.Ct. at 548, 549; *Ruhnau-Evans-Ruhnau v. United States, supra,* 3 Cl.Ct. at 218; *Nab-Lord Assoc's v. United States, supra,* 230 Cl.Ct. at 700, 682 F.2d at 944.

It is arguable that a rule of law which requires the submission of a written underlying claim to a contracting officer in order to initiate the accrual of interest may discourage efforts by contractors and the government to work out their differences informally. However, in addressing certified claims to a contracting officer, which are claims in excess of $50,000 required by 41 U.S.C. § 605(c)(1) to be certified by the

---

4. The court expresses no opinion as to whether an actual dispute, necessary to bring a claim, existed in this case. It may very well be that the parties were merely negotiating and a dispute had not yet arisen. *See Esprit Corp. v. United States,* 6 Cl.Ct. 546, 548–49 (1984). However, the court finds it unnecessary to decide whether or not a dispute was present in this case due to the fact that plaintiff failed to submit an underlying claim to the contracting officer for decision. *See* 41 U.S.C. § 605(a) (Supp.1984).

contractor,[5] the Court of Claims stated: "The purposes of the certification requirement are to discourage the submission of unwarranted contractor claims and to encourage settlements." *Folk Construction Co. v. United States*, 226 Ct.Cl. 602, 604 (1981). *See also generally Esprit Corp. v. United States, supra.* The purpose of such a certification provision was to discourage contractors from issuing inflated claims which the government will not accept and which will cost the government a great deal to defeat. *Paul E. Lehman, Inc. v. United States*, 230 Ct.Cl. 11, 15, 673 F.2d 352, 355 (1982). The discouragement in submitting inflated claims arises in that contractors who submitted fraudulent claims could be held liable to the government for doing so. *Id.* 230 Ct.Cl. at 14, 673 F.2d at 354. *See also* 41 U.S.C. § 604 (Supp.1984). Clearly, Congress intended that such certified claims be submitted before settlement negotiations were entered into or during such negotiations. Submissions of such claims were intended to encourage settlements and not to hinder them. Most importantly, this case law and its cited legislative history points out that Congress recognized that some claims would be filed prior to or during negotiations.[6]

### B.

Given the court's rejection of plaintiff's argument that a claim, as envisioned by the CDA, exists just by virtue of the fact that a dispute may exist, the question then becomes whether or not plaintiff ever submitted a proper underlying claim to the contracting officer consistent with 41 U.S.C. § 605(a). Said claim must have been submitted prior to the time plaintiff submitted its claim for interest to the contracting officer on February 9, 1983. The issue, properly phrased, becomes: are either of plaintiff's April 22, 1982 or August 26, 1982, letters to the contracting officer sufficient to constitute an underlying quantum claim. Such a question is one of law which the court answers in the negative.[7]

The court will first consider plaintiff's April 22, 1982, letter to the contracting officer. Said letter consisted of a cover letter and a table detailing the cost items which at that time remained unresolved. The cover letter identified as the subject of the letter, "Final Settlement of Hoffman Contract." The cover letter stated in pertinent part:

Enclosed is a chart outlining the remaining items which must be resolved to close out our Contract.

We would like to meet in the near future with you or with someone with the authority to resolve these items. The major items on this list have been unresolved for several months or more. It is the best interest of both the VA and Hoffman to reach an agreement on these issues and close out the Contract without further delay.

Please let me know by May 1, 1982 when you or your authorized representative will be available to meet in Seattle. We

---

5. 41 U.S.C. § 605(c)(1) states:
   "For claims of more than $50,000, the contractor shall certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, and that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable."

6. The court notes that contractors often submit claims to the contracting officer requesting a final decision which they subsequently settle with the agency involved. In those instances, these contractors are entitled to interest from the dates their claims are filed with the contracting officer. *See, e.g., B & A Electric Co.*, 85–1 BCA ¶ 17,781 at 88,809 (1985).

7. The court notes that if either letter is considered a claim submitted to the contracting officer, plaintiff's interest recovery at most would be limited to an amount of interest calculated from the date the claim was submitted until the date a final settlement was entered into regarding a particular cost item. Such an interest award would not be based on defendant's alleged unreasonably slow review of plaintiff's cost proposals as argued by plaintiff in its April 22, 1982, table. The Court is of the view, as discussed *infra*, that interest based on such a delay is not the type of interest recoverable under 41 U.S.C. § 611.

request that this meeting be held within 30 days.

In reviewing the April 22, 1982, and August 26, 1982, letters there are several factors that merit consideration in determining whether or not either letter constitutes a claim submitted to the contracting officer. The first factor to consider is the definition of "claim" as set out in the Disputes Clause of the contract. A claim is defined as "a written demand or assertion by one of the parties seeking, as a legal right, the payment of money, * * * arising under or relating to this contract." Clearly, there is a writing in this case seeking the payment of money. However, the question which arises in considering the April 22, 1982, letter is whether or not it is a "demand" or "assertion", or more precisely, as provided in section (c)(iii) of the Disputes Clause, the question is whether the letter is a written claim *"submitted to the contracting officer for a decision."* (Emphasis added.) The cover letter clearly indicates that plaintiff desired to meet with the contracting officer or another person of authority to resolve the remaining cost issues. The letter expresses a willingness to reach an agreement as opposed to a demand that the contracting officer reach a final decision on the cost items listed in the accompanying table.

■ On the other hand, the detailed explanations of each cost item in the table enclosed with the April 22, 1982, letter could be characterized as assertions of a legal right. In the case of each cost item, plaintiff includes an argument on why it should be paid. After reviewing the cover letter and the table, the court concludes that they do not contain the requisite demand or assertion for relief or a final decision. The cover letter clearly seeks a meeting at which agreements can be reached concerning specific cost items. It does not request the contracting officer to render a decision. The statements in the table are no more than arguments spelling out the plaintiff's position. The court notes that plaintiff ended each cost item argument stating that it *should* be paid the full

amount as opposed to what defendant was offering. Such language appears to the court to fall short of an assertion of entitlement.

■ Another factor which must be considered is the requirement in 41 U.S.C. § 605(c)(1) that claims of more than $50,000 must be certified by the contractor (*see supra* note 4). In this case, clearly the total of all of the cost items exceeded $50,-000. However, the court finds it unnecessary to express an opinion concerning whether or not plaintiff's requests for payment should be deemed unitary thus requiring certification. *See Black Star Security, Inc. v. United States,* 5 Cl.Ct. 110 (1984). The court need not delve into the area of aggregating claims because at least one of plaintiff's cost items exceeded $50,-000 and thus required certification. If either plaintiff or the contracting officer considered the April 22, 1982, letter a claim, certification should have been required. *See Tecom, Inc. v. United States,* 732 F.2d 935, 937 (Fed.Cir.1984).

■ Two other factors which should be present in the letters in order to establish that a claim has been submitted are: (1) specification of the relief desired, and (2) clear identification of the amount of monetary compensation requested. *Z.A.N. Co. v. United States,* 6 Cl.Ct. 298, 304 (1984); *Tecom, Inc. v. United States, supra,* 732 F.2d at 936–37. In the April 22, 1982, letter, plaintiff requested a meeting to resolve certain remaining cost items. The only relief that plaintiff can be said to have specified was that it wished to settle certain cost disputes as soon as possible and it desired to receive the listed amounts in its table. The court concludes that this was an insufficient expression of specific relief. The court believes that in order to establish that a "claim" has been submitted to a contracting officer the relief requested must include an expression of interest in a final decision by the contracting officer. *See Paragon Energy Corp. v. United States,* 227 Ct.Cl. 176, 192, 645 F.2d 966, 976 (1981). Such a belief is supported by the language in section (c)(iii) of the Dis-

putes Clause which states that a written claim shall be submitted to the contracting officer *for decision.* *See also* 41 U.S.C. § 605(a). In this case, plaintiff merely requested an opportunity to resolve certain cost disputes. It did not request a final decision from the contracting officer.

Plaintiff did indicate additional cost amounts for which it felt it should be compensated. This would seem to satisfy the requirement regarding the identification of a specific amount of compensation as set out in *Z.A.N. Co. v. United States, supra,* 6 Cl.Ct. at 304 and *Tecom, Inc. v. United States, supra,* 732 F.2d at 936–37. However, the court does note that the overall tenor of the April 22, 1982 cover letter seeking an "agreement" on certain cost issues, and the fact that plaintiff included in its table additional amounts as offered by defendant for the various cost items, indicate that more than actually seeking a specific cost amount, plaintiff was interested in settling the cost disputes as soon as possible. This expressed interest in compromise and the listing of two sets of figures raises doubts concerning whether or not the cost amounts listed by plaintiff satisfy the requirements of *Z.A.N. Co. v. United States, supra,* and *Tecom, Inc. v. United States, supra.*

There are additional factors which weigh against the April 22, 1982, letter being considered a claim under 41 U.S.C. § 605(a). First, at no time did plaintiff mention or invoke the CDA or the appeal routes available to it after a decision by the contracting officer in the letter. *See Paragon Energy Corp. v. United States, supra,* 227 Ct.Cl. at 192, 645 F.2d at 976. Second, the fact that a second letter was written to the contracting officer on August 26, 1982, requesting that some of the same cost items be settled at another meeting indicates that the April 22, 1982, letter was not a request for a final decision. The second letter seeking settlement indicates that the first letter was merely a part of plaintiff's efforts to negotiate with defendant concerning the disputed cost items.

A third factor weighing against considering the April 22, 1982, letter a claim is that the contracting officer actually rendered no decision based on the letter. If anything, the letter led to negotiations and not a final decision. The rendering of a decision by the contracting officer would not necessarily make the letter a claim, but it would be additional support for finding the letter to be a claim. *See Paragon Energy Corp. v. United States, supra,* 227 Ct.Cl. at 192, 645 F.2d at 976. The fact that the contracting officer rendered no decision in this case on the underlying claims either in response to plaintiff's letters or otherwise serves to distinguish, in part, this case from *Palmer & Sicard, Inc. v. United States,* 6 Cl.Ct. 232 (1984).

The final indication that the April 22, 1982, letter was not a claim as set out in 41 U.S.C. § 605(a) is again the language of the CDA. Section 611 of the CDA states that interest runs from the date a section 605(a) claim is received by the contracting officer. If the April 22, 1982, letter is a section 605(a) claim then the interest would run from the date of its receipt by the contracting officer. However, in this case, plaintiff was already claiming $82,038 in interest. Such a request for interest is inconsistent with a claim as set out in the CDA.

■ After considering all of the pertinent factors, the court concludes that plaintiff's April 22, 1982, letter does not constitute a claim submitted to the contracting officer as required by 41 U.S.C. § 605(a). Plaintiff's August 26, 1982, letter is basically of the same character as the April 22, 1982, letter, and therefore, the court concludes that it also does not constitute a claim. The August 26, 1982, letter, requested a meeting at which certain cost disputes could be settled. The body of the letter basically apprised the contracting officer of plaintiff's progress in settling with defendant the cost disputes set out in the April 22, 1982, letter. The August 26, 1982, letter cannot be considered a claim.[8]

8. Another factor which weighs against consider-

ing the April 22, 1982, and August 26, 1982,

## C.

■ Even assuming *arguendo* that a claim was submitted to the contracting officer at some point in time (*e.g.* the April 22, 1982 letter) the court is of the view that the basis (unreasonable delay in payment) upon which plaintiff is asserting its right to an interest award is not consistent with the provision allowing on interest payment in 41 U.S.C. § 611. It has been noted that the intent of the CDA "is to provide interest on a claim from the date the contracting officer 'receives' a claim." *Monroe M. Tapper & Assoc's v. United States*, 222 Ct.Cl. 34, 41, 611 F.2d 354, 359 (1979). There is no provision in the CDA for pre-claim interest.[9]

The court recognizes that some excessive delays, between the date of plaintiff's cost proposals for the changed work and the date of payment by defendant, did exist.

For example, plaintiff completed work on Field Proceed Order "O" (a change order) on August 5, 1981. Defendant had budgeted $8,000 for said changed work. On August 27, 1981, plaintiff submitted a cost proposal for this work in the amount of $46,700. On or about September 21, 1981, plaintiff resubmitted its cost proposal at the revised amount of $38,327. Over 7 months later, on June 1, 1982, defendant issued a change order for $38,327. Though the court does not know what occurred during the period September 21, 1981— June 1, 1982, such a 7-month delay might well be deemed excessive absent a satisfactory explanation.

■ Excessive delay in receiving payment places equity and justice on the side of plaintiff. However, "interest cannot be collected from the government on that ba-

letters underlying claims is that the contracting officer appeared to consider a January 29, 1982, worksheet submitted to him at a meeting on February 9, 1982, plaintiff's initial claim for interest (*see infra* note 9). If that is indeed the case then the letters the court is considering as potential underlying claims had not been submitted as of February 9, 1982, and thus there was no underlying quantum claim as of that time upon which to base any interest award.

The February 9, 1983, letter (not to be confused with the February 9, 1982, meeting) submitted to the contracting officer appears to be the earliest submission which would meet the requirements of a claim for interest as set out by the court in the text above. However, if the above-mentioned January 29, 1982, worksheet submitted to the contracting officer at the February 9, 1982, meeting, was a claim for interest then the two letters discussed in the text above cannot be considered underlying claims.

The court should note at this time that not one of the factors listed above is necessarily required to establish that a particular submission to a contracting officer is a claim. The court only concludes that after considering all of these factors neither the April 22, 1982, nor August 26, 1982, letters are claims under section 605(a) of the CDA.

9. In reviewing specifically the contracting officer's decision, the court notes that it is not at all clear upon what grounds he based his decision. The court surmises that the contracting officer essentially rejected plaintiff's claim for interest based solely on defendant's delay in approving plaintiff's cost proposals. The contracting officer was clearly looking for some form of writ-

ten claim submitted to him as required by 41 U.S.C. § 605(a). The court infers that the contracting officer found that such a claim was submitted to him at a meeting on February 9, 1982, in the form of a worksheet dated January 29, 1982.

It appears that the contracting officer considered said worksheet to be a claim for interest. He did not find it to be an underlying claim upon which an interest award could be based as the court concludes is required by 41 U.S.C. § 611. *See Esprit Corp. v. United States*, 6 Cl.Ct. 546, 548, 549 (1984); *Ruhnau-Evans-Ruhnau Assoc's v. United States*, 3 Cl.Ct. 217, 218 (1983); *Nab-Lord Assoc's v. United States*, 230 Ct.Cl. 694, 700, 682 F.2d 940, 944 (1982). After a review of the January 29, 1982, worksheet, the court concludes that it, like the April 22, 1982 and August 26, 1982, letters, does not have the necessary elements to constitute a claim as intended by section 605(a) of the CDA. Therefore, the contracting officer could not have validly found the January 29, 1982, worksheet to constitute an underlying claim.

If the contracting officer merely found the January 29, 1982, worksheet to be plaintiff's initial claim for interest then his decision is invalid. The CDA requires that an interest award be based on an underlying claim. *See* 41 U.S.C. § 611. *See also Esprit Corp. v. United States, supra,* 6 Cl.Ct. at 548. As of February 9, 1982, no such claim had been submitted upon which to base an award of interest. A contracting officer has no authority to waive a requirement imposed by Congress. *See Paul E. Lehman, Inc. v. United States*, 230 Ct.Cl. 11, 17, 673 F.2d 352, 356 (1982). Therefore, the contracting officer's interest award to plaintiff is invalid.

sis." *Economy Plumbing & Heating Co. v. United States*, 200 Ct.Cl. 31, 46, 470 F.2d 585, 594 (1972). The Court of Claims in *Economy Plumbing & Heating Co., supra*, 200 Ct.Cl. at 46, 470 F.2d at 594 cited the Supreme Court which stated:

> * * * Had Congress desired to permit the recovery of interest in situations where the Court of Claims felt it just or equitable, it could have so provided. The absence of such a provision is conclusive evidence that the court lacks any power of that nature. [*United States v. N.Y. Rayon Importing Co.*, 329 U.S. 654, 660, 67 S.Ct. 601, 604, 91 L.Ed. 577 (1947).]

There was no such statutory authority for the Court of Claims to award interest on such grounds in 1947 and there is no such authority for this court to do so now.

■ As stated above, awards of interest against the government are strictly construed. *Fidelity Construction Co. v. United States, supra*, 700 F.2d at 1383. Interest may be awarded by this court only if a statute or contract provision expressly provides for payment thereof. 28 U.S.C. § 2516(a) (Supp.1984). As the court has already stated the provision for an interest award in section 611 of the CDA is limited and certainly does not encompass an award of interest based on equity. The court also concludes that the pertinent contract provision in plaintiff's contract dealing with the award of interest parallels section 611 of the CDA, and therefore, plaintiff is not entitled to an interest award pursuant to Article 6(h) (Disputes Clause) of its contract with defendant. Given the unexplained delays in this case this result may appear harsh, but the court must act within the limits of the rules restricting the payment of interest on claims against the government. *See Monroe M. Tapper & Assoc's v. United States, supra*, 222 Ct.Cl. at 42, 611 F.2d at 360.[10]

## III.

The court infers from plaintiff's brief and some of its correspondence with defendant that plaintiff considers itself entitled to an equitable adjustment including an interest award because it did not contract to finance the work, including work precipitated by change orders. If plaintiff is indeed basing its interest claim on the cost of financing the change order work then the court must reject such an interest claim. The court has assumed, throughout this opinion, that the payments received by plaintiff in the final change order contract modifications did not contain any payment for interest.

■ If plaintiff borrowed money to finance the change order work, and thus incurred an additional interest expense, then such an added interest cost may well be a compensable increase in the cost of performance which would entitle plaintiff to an equitable adjustment. *See Bell v. United States*, 186 Ct.Cl. 189, 205–06, 404 F.2d 975, 984 (1968). Such an equitable adjustment would include compensation for extra interest expenses incurred during a period of delay. *See S.S. Silberblatt, Inc. v. United States*, 228 Ct.Cl. 729, 731 (1981). However, in this case, plaintiff is not entitled to such an equitable adjustment from this court.

■ First, there has been no showing by plaintiff that the interest it is claiming was precipitated by borrowing to finance the change order work or that extra interest expense was incurred on existing loans as the direct result of defendant's delay. Second, and more importantly, in the case of each change order plaintiff issued a cost proposal. After studying said proposals and negotiating to various degrees concerning the proposals, defendant issued change orders for the amounts proposed by plaintiff. Plaintiff admits that said final amounts were agreed upon (Plf's Br. 3). The court concludes that such

---

**10.** The court notes that the plaintiff did not assert, and properly so, any entitlement to interest based on The Prompt Payment Act, Pub.L. No. 97–177, 96 Stat. 85 (1982). Upon a review of said statute it appears that its October 1, 1982, effective date would preclude its application in this case.

agreements and the issuance of final change orders constitute, in each case, an accord and satisfaction between the parties on the increased costs produced by the change orders. *See Merritt-Chapman & Scott Corp. v. United States*, 198 Ct.Cl. 223, 229, 458 F.2d 42, 45 (1972), *Brock & Blevins Co., Inc. v. United States*, 170 Ct.Cl. 52, 57–59, 343 F.2d 951, 954–55 (1965). Absent an express reservation by plaintiff limiting the scope of the settlement, plaintiff cannot now attempt to revive a portion of the claim. *Cannon Constr. Co. v. United States*, 162 Ct.Cl. 94, 101, 319 F.2d 173, 177 (1963) (as cited in *Merritt-Chapman & Scott Corp. v. United States, supra*, 198 Ct.Cl. at 229–30, 458 F.2d at 45–46). *See also B & A Electric Co., supra*, 85–1, BCA ¶ 17,781 at 88,809.

■ If plaintiff is basing its interest claim, not on additional interest incurred as the result of borrowing, but on the use of its own equity capital to finance the change order work, then such an interest claim must also be rejected. It is well-established that the use of equity capital is regarded as an element of profit and is not compensable. *See S.S. Silberblatt, Inc. v. United States, supra*, 228 Ct.Cl. at 732. Therefore, the court concludes that if plaintiff's interest claim is in fact based upon the cost of increased borrowing or the use of its equity capital then recovery is precluded by either an accord and satisfaction or operation of law.

## IV.

Plaintiff asserts that it is entitled to, as a minimum, an interest recovery of $20,314. Plaintiff bases this assertion on defendant's admission in response to a Request For Admissions, that plaintiff is entitled to a minimum recovery of $20,314 consistent with the contracting officer's final decision dated January 11, 1984. Plaintiff argues that this admission is binding on defendant absent a motion to withdraw said admission and the court's approval of said motion pursuant to RUSCC 36(b).

■ It is true that in general an admission is binding on the party who made it. *See Jones v. Employers Ins. of Wausau*, 96 F.R.D. 227, 229 (N.D.Ga.1982). However, it is also true that an admission by defendant's counsel of defendant's liability is not controlling in this court. *See Hooper v. United States*, 53 Ct.Cl. 90, 98 (1918). *See also Cowles v. United States*, 99 Ct.Cl. 731, 742, 50 F.Supp. 242, 247 (1943). More importantly, the court is of the view that the admission at issue deals more with a question of law than a matter of fact. The question of law being the contracting officer's authority to award interest solely upon a claim for interest with no underlying claim. Such an admission or stipulation of law is not binding on the court. *See Swift & Co. v. Hocking Valley Ry. Co.*, 243 U.S. 281, 289, 37 S.Ct. 287, 289, 61 L.Ed. 722 (1917); *Hegeman-Harris & Co. v. United States*, 194 Ct.Cl. 574, 581, 440 F.2d 1009, 1012 (1971); *The Sac & Fox Tribes v. United States*, 161 Ct.Cl. 189, 198, 315 F.2d 896, 901, *cert. denied*, 375 U.S. 921, 84 S.Ct. 266, 11 L.Ed.2d 165 (1963). In the case cited by plaintiff in support of its argument that defendant is bound by its admissions, the issue surrounded admissions of fact and not of law. *Jones v. Employers Ins. of Wausau, supra*. Therefore, the admission in that case is distinguishable from the admission involved in this case.

■ The court concludes that neither defendant nor the court is bound by defendant's admission regarding plaintiff's entitlement to the $20,314 in interest previously awarded by the contracting officer. As the court set out above, the contracting officer had no underlying claim upon which to base his award of interest as required by section 611 of the CDA. "The contracting officer * * * had no authority to waive a requirement that Congress imposed." *Paul E. Lehman, Inc. v. United States, supra*, 230 Ct.Cl. at 17, 673 F.2d at 356. The court concludes that the contracting officer lacked authority to award interest absent an underlying claim and that plain-

tiff is not entitled to any interest award at this time.[11]

## V.

Based on the above reasoning, the court concludes that plaintiff is not entitled to an award of interest as a matter of law given the circumstances of this case. Therefore, defendant's motion for summary judgment is granted, with plaintiff's complaint to be dismissed.

---

**11.** Generally, the decision of a contracting officer is final and conclusive unless an appeal is taken to a Board or suit is timely commenced as authorized by 41 U.S.C. § 605(b). In this case, plaintiff filed a timely action in this court pursuant to 41 U.S.C. § 609(a). Once such an action is filed, the case proceeds *de novo* in this court. *See* 41 U.S.C. § 609(a)(3). Thus the court is not bound by the contracting officer's prior determination that plaintiff was entitled to receive an interest payment.