**CLARK MECHANICAL CONTRACTORS, INC.**

v.

**The UNITED STATES.**

No. 629–83C.

United States Claims Court.

April 25, 1984.

Robert A. Newcomb, Little Rock, Ark., attorney of record for plaintiff.

Joseph T. Casey, Jr., Washington, D.C., with whom was Acting Asst. Atty. Gen., Richard K. Willard, Washington, D.C., attorney of record for defendant. Major Robert T. Lee, U.S. Air Force, Washington, D.C., of counsel.

## OPINION

LYDON, Judge:

This case comes before the court on defendant's motion for summary judgment and plaintiff's opposition thereto. Defendant's motion is based on the contention that the claim asserted by plaintiff in its complaint is barred by a release executed by plaintiff under which plaintiff discharged the government from all claims and demands under or arising from the performance of an Air Force contract. While the release in question excepted two claims from coverage, it did not except from coverage the claim asserted in this case. Plaintiff does not dispute the execution of the release, nor does it dispute the fact that the claim in question was not set forth as an exception in the release. Rather, plaintiff asserts that defendant's motion for summary judgment should be denied because of the existence of a disputed issue of material fact. In substance, plaintiff contends that its president was misled by the government into believing that plaintiff could assert the claim in issue even though the president executed the release without listing the claim as an exception in the release. Resolution of this allegation, plaintiff maintains, is a disputed issue of fact that precludes disposition of this case by summary judgment. Based on the submissions of the parties, and without oral argument, it is concluded that defendant's

motion for summary judgment should be granted.

On May 7, 1982, plaintiff contracted (No. FO 3602–82–C–0030) with the United States Department of the Air Force (Air Force) to replace one cooling tower with two new cooling towers at Building 314 on the Little Rock Air Force Base in Arkansas. During the course of contract performance, a number of disputes arose between the parties relative thereto. One of these disputes involved a matter of contract interpretation as a result of which plaintiff submitted a claim to the contracting officer for $5,863. The amount of this claim reflected, according to plaintiff, the increased costs plaintiff incurred in purchasing the type of cooling tower requested by the Air Force (Marley Cooling tower), instead of allowing plaintiff to purchase the type plaintiff felt was permitted by the contract.

The contracting officer denied plaintiff's claim on October 13, 1982.[1] In her decisional letter, the contracting officer set forth standard language advising that denial of the claim was a final decision of the contracting officer; that plaintiff had 90 days from receipt of said decision within which to appeal to the Armed Services Board of Contract Appeals (ASBCA); or that in lieu of appealing to the ASBCA, plaintiff could bring an action directly in the "United States Court of Claims" within 12 months of the date of receipt of said decision. Said letter also advised plaintiff of the accelerated procedure of the ASBCA if the amount in dispute was under $50,000 (180-day limit in processing claim), and the optional small claims expedited procedures of the ASBCA if the amount in dispute was $10,000 or less (120-day limit in processing claim).

By letter dated October 19, 1982, the contracting officer wrote plaintiff as follows:

1. In that a final decision has been rendered rejecting that an ambiguity exists

---

1. The contracting officer denied the claim on the ground the cooling tower model plaintiff proposed to use as a replacement for the existing cooling tower did not meet the design capabilities listed in the specifications and drawings. Plaintiff's claim was based on the assertion that an ambiguity existed between the specification and the drawings.

in the contract, your invoice for the services in question is returned without further action.

2. Be advised that before final payment can be made, you must submit a "Release of Claims" and an invoice, original and four copies, marked "Final Invoice".

3. Your attention to this matter is greatly appreciated.

On November 29, 1982, plaintiff, through its president, executed a document entitled, "Contractor's Release Of Claims." This release read in pertinent part as follows:

Pursuant to the terms of Contract No. FO3602–82–C–0030 and in consideration of the sum of Thirty-Nine Thousand Eight Hundred Eighty-Eight Dollars ($39,888.00) * * * the Contractor, * * * does remise, release, and discharge the Government * * * from all liabilities, obligations, claims, and demands whatsoever under or arising from the said contract, except:

1. Specified claims in stated amount or in estimated amounts where the amounts are not susceptible of exact statement by the Contractor, as follows: * * * [Two specified types of claims were thereafter set forth in the release. The claim presented in this case was not set forth as an exception in this release.]

On October 18, 1983, plaintiff filed its complaint in this court as a direct access case under section 10(a)(1), (3) of the Contract Disputes Act of 1978, codified at 41 U.S.C. § 609 (1982). In its complaint, plaintiff sought to recover $5,863 in damages on the theory of contract reformation.

■ As a general rule, the execution by a contractor of a release which is complete on its face reflects the contractor's unqualified acceptance and agreement with its terms and is binding on both parties. *Inland Empire Builders, Inc. v. United States*, 191 Ct.Cl. 742, 752, 424 F.2d 1370, 1376 (1970); *Metric Constr. Co. v. United States*, 1 Cl.Ct. 383, 396 (1983). It is further well established that where a contractor has the right to reserve claims from the operation of a release, but fails to exercise that right, which is the situation in the case at bar, it is neither improper nor unfair, absent some vitiating or aggravated circumstance,[2] to preclude the contractor from maintaining a suit based on events which occurred prior to the execution of the release. *H.L.C. & Associates Constr. Co. v. United States*, 176 Ct.Cl. 285, 293, 367 F.2d 586, 590 (1966). Without more, plaintiff is precluded from prosecuting its claim in this court because of its execution of a general release.

■ Plaintiff seeks to avoid the bar of its prosecution of its claim because of its execution of the release by claiming that its president, who executed the release on behalf of plaintiff, was "misled" by the October 18, 1982, decisional letter of the contracting officer and the October 19, 1982, letter from the contracting officer advising plaintiff that a "Release of Claims" must be submitted before a final payment could be made.

In his affidavit, attached to plaintiff's brief in opposition to defendant's motion for summary judgment, plaintiff's president stated that, since the contracting officer in his October 18, 1982, decisional letter set forth the appeal provisions plaintiff could follow and on the following day, October 19, 1982, informed plaintiff by letter of "the way to go ahead and collect the rest of the money that was due," he felt the release he executed was only to release claims "unknown to the Government or that were not in some stage of litigation at the time." Plaintiff's president claims these two letters misled him into believing that a suit could be maintained on the claim now before the court even though he signed the release. He further asserts in his affidavit that he was also misled by the fact that the government sent the release form to him without being requested to do

---

2. *See J.G. Watts Constr. Co. v. United States,* 161 Ct.Cl. 801, 806–807 (1963) where special and limited situations in which a claim may be entertained despite the execution of a release are set forth. The instant case does not fit into the mold of those special and limited situations discussed therein.

so by plaintiff and with the threat [which he felt was implicit in the contracting officer's letter of October 19, 1982] of withholding money due plaintiff if the release was not signed.

Accepting at face value the above facts set forth in the affidavit of plaintiff's president, said facts do not fall within the pale of special and limited situations which would justify permitting prosecution of the claim set forth in the complaint despite the release executed by plaintiff. A reasonable reading of the October 18 and 19, 1982, letters from the contracting officer to plaintiff discloses that they were in no way misleading or ambiguous. The appeal procedures set forth in the October 18, 1982, decisional letter were required to be set forth therein by statute (section 6(a) of the Contract Disputes Act, *supra*, 41 U.S.C. § 605 (1982)), regulation (32 C.F.R. § 1–314(i)(2) (1982)), and case law (*Marley v. United States*, 191 Ct.Cl. 205, 222, 423 F.2d 324, 333–334 (1970)).[3] As to the letter of October 19, 1982, government contracts generally provide that before final payment can be received, the contractor must execute a general release, but may specifically except from the operation of said release any claims the contractor may have against the government relative to the contract. *See J.G. Watts Constr. Co. v. United States*, 161 Ct.Cl. 801, 804–805 (1963). There is no reason to believe that the contract in issue failed to so provide. Accordingly, it is immaterial that plaintiff did not request that the release be sent to it or that final payment would be withheld until a general release was executed by plaintiff. While execution of a general release was required before final payment would be made to plaintiff, plaintiff was free to list as exceptions to the operation of said release as many claims as it wished. In fact, two types of claims were listed as exceptions on the release plaintiff executed.

Unlike the situation in *Duhame v. United States*, 133 Ct.Cl. 360, 363, 135 F.Supp. 742 (1955), plaintiff was fully aware of the claim in question at the time it executed the release. The release was executed on November 29, 1982, a little over a month after the contracting officer had denied the claim on October 18, 1982. *See Shepherd v. United States*, 125 Ct.Cl. 724, 741–742, 113 F.Supp. 648 (1953). One could reasonably infer that as of the date the release was executed plaintiff did not intend to pursue this $5,863 claim further. Such an inference by the contracting officer, when she received the executed release from plaintiff with no listing of this claim as an exception, would certainly be reasonable and rational. Plaintiff did not appeal this denial by the contracting officer until it filed its complaint in this court on October 18, 1983, a year later.

■ Finally, plaintiff suggests that the release should not be given operative effect because "the Government did not pay more than it already legally was required to do." In essence, plaintiff argues that there was no consideration given in return for plaintiff's execution of the release. Such a contention is without merit. *See United States v. Wm. Cramp & Sons Co.*, 206 U.S. 118, 128, 27 S.Ct. 676, 678, 51 L.Ed. 983 (1907); *Inland Empire Builders, Inc. v.*

---

**3.** The mandatory recitation of the appeal procedure in the decisional letter provides no support for plaintiff's cause. In *H.L.C. & Associates Constr. Co. v. United States*, 176 Ct.Cl. 285, 293–295, 367 F.2d 586, 590–592 (1966) the contractor appealed the contracting officer's decision to the ASBCA 2 days after executing a release. The Court of Claims inferred in that case that the appeal was in preparation prior to the date the release was executed and accepted the view of the contractor's vice president that he did not intend, when executing the release, to release the claim in issue. Notwithstanding this favorable inference and acceptance, the Court of Claims, held that the vice president's inadvertence in signing the release was a unilateral mistake and the subjective and unmanifested intention of the vice president could not avoid the general effect of the release. In this case, the release was executed a month or so after the contracting officer's decision and no appeal was forthcoming for almost a year. There is no inference favorable to plaintiff that can be drawn from these facts, and the subjective and unmanifested intention of plaintiff's president that he did not intend to release the claim in question cannot avoid the otherwise general effect of the release.

*United States, supra,* 191 Ct.Cl. at 751–752, 424 F.2d at 1378.

Accepting fully the factual assertions in plaintiff's affidavit, these facts fail to establish the existence of any material facts in dispute. There are no allegations that show or suggest any misrepresentation, fraud or other inequitable conduct on the part of government officials relative to execution of the release. The transmission by the contracting officer of the October 18 and 19, 1982, letters to plaintiff do not constitute misrepresentation, fraud or inequitable conduct, and this is the sole basis for the contention of plaintiff's president that a trial is necessary in this case. To the extent that plaintiff was "misled" as it claims, into signing the release, the government cannot be shown to be at fault. With respect to whether there is a genuine issue of fact, the court is not required to accept a party's statement that a factual dispute exists. The party opposing a motion for summary judgment must set forth facts in detail in an affidavit which shows the existence of a triable factual issue. Mere conclusionary statements are insufficient. *See Union Carbide Corp. v. American Can Co.,* 724 F.2d 1567, 1571 (Fed.Cir.1984). Plaintiff's affidavit is totally lacking in trying to establish a disputed issue of material fact in this regard.

Summary judgment is appropriate in this case since no genuine issue of material fact exists. A material fact is one that will make a difference in the result of the case. *Curtis v. United States,* 144 Ct.Cl. 194, 199, 168 F.Supp. 213 (1958). Plaintiff's affidavit and its brief fail to disclose directly or by inference a disputed issue of fact. Under such circumstances, defendant is entitled to judgment as a matter of law. Utilization of this salutary procedure in this case will avoid unnecessary expense to the parties and wasteful utilization of judicial resources. *See Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.,* 731 F.2d 831 at 835–36 (Fed.Cir.1984); *Carpenter v. United States,* 4 Ct.Cl. 705 at 722–723 (1984) (Lydon, J.).

For reasons discussed above, defendant's motion for summary judgment is granted, with plaintiff's complaint to be dismissed.