**ALLIANCE OIL & REFINING CO., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 196–87C.

United States Claims Court.

Oct. 30, 1987.

Alan S. Weitz, Washington, D.C., for plaintiff. Edward J. Tolchin, Ginsburg, Feldman and Bress, Chartered, of counsel.

Howard Lipper, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant. Jacob D. Vreeland, Office of Gen. Counsel, Dept. of Energy, of counsel.

## OPINION

NETTESHEIM, Judge.

This case is before the court on defendant's motion for summary judgment. Plaintiff has opposed, and argument has been held. The major issue to be resolved is whether plaintiff made a knowing release of its contract claims when the contracting officer's final decision failed to apprise plaintiff of its appeal rights.

## FACTS

The following facts are uncontroverted. Alliance Oil & Refining Company ("plaintiff") entered into a contract with the Unit-

ed States Department of Energy ("DOE") in 1985 for the purchase of an estimated amount of crude oil. Plaintiff posted a letter of credit in DOE's favor to ensure the fulfillment of its contractual obligations. By wire of January 23, 1986, DOE increased the amount of oil that plaintiff was required to take under the contract. In its letter of January 24, 1986, to the contracting officer, plaintiff protested the volumetric increase, stating that the failure of another contractor to take delivery under its contract was not a valid basis for increasing plaintiff's purchase requirement. The letter concluded: "Please let us know as soon as possible if the volume will be other than that stated in the aforementioned wire." After plaintiff was required to take and pay for increased quantities on two occasions, it wired payment to DOE and simultaneously directed letters to the contracting officer dated February 6 and March 4, 1986, both of which read: Plaintiff "hereby protests payment for any portion of crude oil attributable to additional barrels delivered as a result of the questionable termination of a contract referred to in the wire to [plaintiff] dated 23JAN86 from Barbara C. Tucker, Administrative Contracting Officer."

Before the contracting officer responded to plaintiff's letters, the contract expired. By letter of March 31, 1986, DOE mailed a release to plaintiff. The March 31 letter advised that upon DOE's receipt of the release and settlement of all invoices, DOE would return plaintiff's letter of credit. The release form provided, in pertinent part:

[T]he contractor, upon receipt of the said product by the United States of America (hereinafter called the Government), does remise, release, and discharge the Government, its Officers, Agents, and employees, of and from all liabilities, obligations, claims, and demands whatsoever under or arising from the said contract, except:

1. Specific claims in stated amounts or in estimated amounts [where] the amounts are not susceptible of exact statement by the Contractor, as follows:

On April 7, 1986, the contracting officer denied plaintiff's "protests." The contracting officer's letter further stated that "[s]hould ... [plaintiff] subsequently decide to pursue this matter the provisions of the dispute clause and the Contract Disputes Act must be complied with." Plaintiff had received the March 31 letter transmitting the release "[o]nly a few days before ... receipt of DOE's denial letter." Affidavit of George S. Sturges, Sept. 3, 1987, ¶ 7. On April 11, 1986, plaintiff executed the release without reserving any rights under the contract. Defendant moved for summary judgment on the ground that the release barred plaintiff's pursuing its claim for $33,000 in this court.

## DISCUSSION

 Summary disposition requires that no genuine dispute exist as to any material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor...." *Anderson*, 477 U.S. at ——, 106 S.Ct. at 2513 (citation omitted). As the opponent of summary judgment, plaintiff shall "receive the benefit of all applicable presumptions, inferences, and intendments." *Orchards v. United States*, 749 F.2d 1571, 1574 (Fed. Cir.1984), *cert. denied*, 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985). The court should "resolve all doubt over factual issues in favor of the party opposing summary judgment." *Litton Indus. Prod., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 163 (Fed.Cir.1985).

### 1. *Sufficiency of claim*

Defendant advances the jurisdictional argument that under *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387 (Fed. Cir.1987), plaintiff's letters of February 6 and March 4, 1986, did not constitute claims under the Contract Disputes Act, 41 U.S.C. §§ 601–613 (1982) (the "CDA").

The Federal Circuit said in *Mingus Constructors* that a claim is defined by the subject contract. 812 F.2d at 1395. The

Disputes Clause in the contract between plaintiff and DOE defines a claim, as follows:

(1) A written request submitted to the Contracting Officer;

(2) For payment of money, adjustment of contract terms, or other relief;

(3) Which is in dispute or remains unresolved after a reasonable time for its review and disposition by the Government; and

(4) For which a Contracting Officer's decision is demanded.

 A claim need not be submitted in any particular form or use any particular wording. *Contract Cleaning Maintenance, Inc. v. United States*, 811 F.2d 586, 592 (Fed.Cir.1987). Plaintiff filed a written protest to the contracting officer in the January 24, 1986 letter, followed by the February 6 and March 4, 1986 letters protesting payment pursuant to two invoices. These letters set forth a demand for "adjustment" of the contract or "other relief" in the form of refund of the payments made. Together the three letters constituted a clear and unequivocal statement that gave the contracting officer notice of the basis for the claim. *See Contract Cleaning Maintenance*, 811 F.2d at 592. Although plaintiff was not required to state the amount of money involved, since its letters were sufficient as demanding an adjustment or other relief, *see Tecom, Inc. v. United States*, 732 F.2d 935, 936–37 (Fed.Cir.1984), it is also clear that plaintiff was protesting identifiable payments, specifically, its "wire transfer of full payment this date," as noted in the February 6 and March 4, 1986 letters.

 *Mingus Constructors* also states that a claim must request a decision from the contracting officer, citing *Hoffman Construction Co. v. United States*, 7 Cl.Ct. 518, 525 (1985). *See* 812 F.2d at 1395. *Hoffman* is a creature of its particular facts, *viz.*, the contractor's letter requested a meeting to resolve the remaining cost issues and detailed each cost item. Because the contractor stated that it "*should* be paid the full amount as opposed

to what defendant was offering," 7 Cl.Ct. at 525 (emphasis in original), the court concluded: "Such language appears ... to fall short of an assertion of entitlement." It was in this context that Judge Lydon noted that the contracting officer was not requested to render a decision. The letters in this case share no such infirmity. By its January 24, 1986 letter, plaintiff asked to be notified if the volume would be altered in response to its protests. This language amounts to a demand, albeit politely framed, for a decision by the contracting officer, and therefore complies with the requirement of the Disputes clause that a claim must demand a decision of the contracting officer.

### 2. *Sufficiency of contracting officer's response*

Plaintiff takes the position that a genuine issue of material fact exists as to whether plaintiff knowingly released its claim, since the April 7 decision letter failed adequately to apprise plaintiff of its appeal and election rights under the CDA. Therefore, an initial question is whether the contracting officer's letter, which stated, "Should you subsequently decide to pursue this matter the provisions of the dispute clause and the Contract Disputes Act must be complied with," was sufficient notice to plaintiff of its appeal rights.

The CDA provides that when a contracting officer reviews the claims of a government contractor, "[t]he decision shall state the reasons for the decision reached, and shall inform the contractor of his rights as provided in this chapter...." 41 U.S.C. § 605(a). If a claim is denied, plaintiff can appeal to the agency board under 41 U.S.C. § 606, or, in lieu of appealing to the board, the contractor may institute an action directly in the United States Claims Court under 41 U.S.C. § 609(a)(1).

■ The standard governing this case is the CDA's requirement that the decision give notice of the contractor's rights under the CDA.[1] Cases dealing with notice of appeal rights for claims arising from contracts entered into before the effective date of the CDA are not directly applicable, but give insight into the type of information required before a contractor has been held to a knowing election. In these "transition cases," the contractor had the right to elect to proceed under the Disputes clause or CDA, and the failure to so advise the contractor was held to prevent a knowing election. *See, e.g., S.E.R., Jobs for Progress, Inc. v. United States,* 759 F.2d 1, 3 (Fed. Cir.1985); *National Elec. Coil v. United States,* 227 Ct.Cl. 595, 597 (1981). The transition cases stand for the proposition that compliance with the CDA's notice requirements must be substantial. *See Essex Electro Eng'rs, Inc. v. United States,* 702 F.2d 998, 1003 (Fed.Cir.1983) (sending the board's rules and procedures under the CDA enabled the contractor to make a knowing election); *Santa Fe Eng'rs, Inc. v. United States,* 230 Ct.Cl. 512, 515, 677 F.2d 876, 878 (1982) (notice that contractor could sue directly on claim in Claims Court "in lieu of" appealing to agency board held sufficient); *Tuttle/White Constr., Inc. v. United States,* 228 Ct.Cl. 354, 359, 656 F.2d 644, 647–48 (1981) (advising the contractor of the election and sending the contractor a copy of the CDA held effective). Under this approach the contracting officer's letter, which says only that plaintiff should comply with the provisions of the CDA if it wishes to pursue the matter, does not pass muster.

■ Defendant argues that the April 7, 1986 letter was not a final decision denying plaintiff's claim, since plaintiff was advised that it could pursue the matter further by complying with the Disputes clause or the CDA. "[T]here is nothing to suggest that the contracting officer even intended the April 7, 1986 letter to constitute a final decision...." Def's Brief filed Oct. 9, 1987, at 3 n. 1. According to defendant, if the decision letter is not final, it is not deficient in respect of giving the required

---

**1.** 48 C.F.R. (FAR) § 33.211(a)(4)(v) (1986), provides that the contracting officer must prepare a written decision which includes a paragraph setting forth the appeal procedures, appeal options, and time limits. *See Mark Smith Constr. Co. v. United States,* 10 Cl.Ct. 540, 545 (1986). The Federal Acquisition Regulations are inapplicable to this contract for DOE's sale of oil.

notice. The contracting officer's decision letter bespeaks of finality. After all, it considered and denied plaintiff's claim. There is nothing in the Disputes clause of the subject contract to require plaintiff after the April 7, 1986 written decision to do more than it did to alert the contracting officer of its claim or to take further steps to perfect its claim before the contracting officer.

Defendant then argues that because the April 7 decision letter failed to inform plaintiff of its rights under the CDA, it should not be considered final and that plaintiff therefore cannot maintain that a final decision failed to inform it of its appellate rights. Defendant reasons that since government attorneys approved the April 7 letter before it was sent and the attorneys know that the CDA requires notice of appeal rights in a final decision, the April 7 letter was not intended to be final. This argument is rejected since the intent of DOE's attorneys was not manifested in the decision letter, which bespeaks of finality.

3. *Knowing release*

■ As a general rule, the execution by a contractor of a release which is complete on its face reflects the contractor's unqualified acceptance and agreement with its terms and is binding on both parties. It is further well established that where a contractor has the right to reserve claims from the operation of a release, but fails to exercise that right ... it is neither improper nor unfair, absent some vitiating or aggravated circumstance, to preclude the contractor from maintaining a suit based on events which occurred prior to the execution of the release.

*Clark Mechanical Contractors, Inc. v. United States*, 5 Cl.Ct. 84, 86 (1984) (citations and footnote omitted). The circumstances under which a claim can be considered despite the execution of a release are special and limited. *Mingus Constructors*, 812 F.2d at 1395 (citing *J.G. Watts Constr. Co. v. United States*, 161 Ct.Cl. 801, 806–07 (1963)). These circumstances include mutual mistake, conduct of the parties acknowledging claims after a release, inclusion of a claim in a release due to obvious mistake or oversight, and fraud or duress.

Plaintiff executed a release of "all liabilities, obligations, claims and demands whatsoever under or arising from the said contract" without reserving any claims under the proviso requiring the contractor to list all claims excepted from the release. This release form was sent to plaintiff pursuant to the following provision of the contract captioned "Purchaser Release of Claims:"

Purchaser hereby releases the Government from all claims arising in connection with this contract, except those claims in stated amounts that purchaser specifically exempts from operation of the release. As evidence of Purchaser's compliance with this Article, Purchaser will execute and transmit a release statement which will be provided by the ACO, to the Contracting Officer, with a copy to the ACO, to the addresses in Article G.002, no later than the date final payment is due. Exceptions to this release not specifically identified and transmitted to the Contracting Officer by that date are forever barred.

Mr. Sturges, plaintiff's president, avers:

Only a few days before my receipt of DOE's denial letter, I received from DOE a March 31, 1986 letter, together with a Contractor's Release Form. The letter informed me that DOE would return Alliance's letter of credit only upon receipt of the Contract Release....

At the time of my receipt of the March 31, 1986 letter, Alliance was facing economic difficulties. Alliance's liquid assets at that time amounted to approximately $5 million. The letter of credit tied up 40 per cent of those assets. DOE was aware that Alliance had been losing money on the NPRC contract during this period.

On April 11, 1986 I signed the Contractor's Release on behalf of Alliance. I believed that only prompt return of the signed Release would assure similar prompt release of Alliance's letter of credit. Although Alliance has previously participated in government contracts, Al-

liance has never before been involved in a government contracts claim dispute such as this one. Accordingly, prior to the present action, I had no familiarity with dispute and appeal procedures in government contract actions, and I specifically did not know that Alliance had any right of appeal. I also believed that paragraph 1 in the Release preserved specific claims of Alliance under the contract of which DOE had knowledge.

Sturges Aff. ¶¶ 7–9. Specifically, the March 31, 1986 cover letter accompanying the release form stated in pertinent part: "Upon receipt of the Contract Release and settlement of all invoices, the Letter of Credit provided for subject contract will be returned to your company."

Plaintiff contends that the release was unknowing either 1) because the release did not state that it applied to "all claims known and unknown" and because Mr. Sturges, who signed the release, thought the release did not cover claims known to DOE, or 2) because the contracting officer's final decision did not advise plaintiff of its appeal rights and, hence, plaintiff reasonably believed that its claim no longer existed and that it had nothing to reserve from the release.

 Plaintiff's first argument can be resolved as a matter of interpreting the release itself. The release is a contractual provision, and its interpretation is a matter of law. *P.J. Maffei Bldg. Wrecking Corp. v. United States*, 732 F.2d 913, 916 (Fed. Cir.1984). Indeed, the release in this case is standard and has been interpreted in *J.G. Watts*, 161 Ct.Cl. at 805, and *Clark Mechanical*, 5 Cl.Ct. at 86, to bar all claims other than those excepted. This interpretation is reinforced by the contract's release provision quoted above. Plaintiff's surmise that a release of "all liabilities, obligations, claims, and demands whatsoever under or arising from said contract" does not include claims known or unknown or of which DOE is aware runs afoul of unambiguous, plain language which carries its ordinary meaning. *See George Hyman Constr. Co. v. United States*, 832 F.2d 574, 579 (Fed.Cir.1987) (citing cases). No excep-

tion to the general rule binding a contractor to a release is recognized for the failure to except a claim based on a contractor's misinterpretation of such release language.

Plaintiff's second argument that Mr. Sturges reasonably believed that plaintiff's claim no longer existed when he executed the release on April 11, 1986, only a few days after receiving the April 7 decision of the contracting officer, hinges on whether the contracting officer's final decision, which did not advise plaintiff of its rights under the CDA, rendered the release unknowing. This argument is addressed to the third exception recognized in *J.G. Watts*, unilateral mistake.

 *J.G. Watts* describes the court's inquiry into the effectiveness of a release. In that case the contractor executed a release without recognizing that the facts gave it a valid claim for breach of contract. The Court of Claims remarked:

> [U]nilateral ignorance of one's legal rights where "all the facts bearing on the existence of the injury were known" does not suffice to relieve one of the consequences of having released the claim. Much as one dislikes depriving any petitioner of the opportunity to prove the existence of a valid claim, to hold otherwise in a case such as this would go far toward destroying that certainty in business affairs which releases were designed to provide.

161 Ct.Cl. at 810 (citation omitted). A release will be held knowing when it evinces knowledge of the facts giving rise to a claim, although not of remedies, that is integral to a valid release. Generally, a contractor is barred by a release if it knows of the facts supporting a cause of action, but not that it has a cause of action. The law on releases draws a sharp distinction between knowledge of the basis of a claim and knowledge of the legal remedies available to pursue it. However, plaintiff argues that the general proposition is displaced in this case because the contracting officer's decision did not give notice of the contractor's rights under the CDA upon denial of its claim. Plaintiff argues that since the decision letter could not bar an

untimely appeal or hold the contractor to a binding election of forum, an issue exists whether plaintiff made a knowing election, *i.e.*, whether the letter misled plaintiff into believing that its claim was extinguished.

Although *Clark Mechanical* suggests that failure to advise a contractor of its appeal rights could mislead the contractor into releasing its claims, 5 Cl.Ct. at 87, the case does not support the proposition that a

final decision that does not advise a contractor of its rights under the CDA as a matter of law renders a release unknowing. It is held that the CDA does not affect the law on releases that a contractor's knowledge of the facts making up the claim, not of remedies, is the knowledge that is critical to whether a release is knowing.[2] Were it otherwise, the Government would forfeit the certainty in administering final payment under its contracts that the law

---

**2.** Even if the law permitted the failure to notify a contractor of rights under the CDA to render a release unknowing, case law would not support the result that the release would be held unknowing as a matter of law. Mr. Sturges avers: "[P]rior to the present action, I had no familiarity with dispute and appeal procedures in government contract actions, and I specifically did not know that Alliance had any right of appeal...." The decision letter failed to give the contractor notice of its rights under the CDA, but it cannot be construed to imply that no further action could be taken on plaintiff's claim or that the claim was concluded or extinguished. The April 7, 1986 letter advised plaintiff that the Disputes clause and the CDA "must be complied with" if plaintiff subsequently decided to pursue its claim. As discussed earlier plaintiff had complied with the Disputes clause already by submitting its claim for final decision. However, the CDA was mentioned as another procedure with which plaintiff had to comply if it wanted to take further action. This mention of the CDA is inconsistent with the interpretation urged by plaintiff that the decision letter led Mr. Sturges to believe that there was nothing plaintiff could do to take further action.

Mr. Sturges further avers: "I also believed that paragraph 1 in the Release preserved specific claims of Alliance under the contract of which DOE had knowledge." Sturges Aff. ¶ 9. Although a release can be rescinded on the basis of a unilateral mistake, *see Mingus Constructors*, 812 F.2d at 1395, "the subjective and unmanifested intention of plaintiff's president ... will not avoid the otherwise general effect of a release." *G.M. Shupe, Inc. v. United States*, 5 Cl.Ct. 662, 675 (1984) (citations omitted). There plaintiff's president in signing the release thought that it did not apply to claims that he expected the agency to settle. Here Mr. Sturges thought that if DOE was aware of a claim, it was not covered by the release. In *H.L.C. & Associates Construction Co. v. United States*, 176 Ct.Cl. 285, 293–95, 367 F.2d 586, 590–92 (1966) (per curiam), the Court of Claims granted the contractor, which had been advised of its appeal rights, the inference that an appeal was in progress and that the contractor's inadvertently signing the release on the claim was a unilateral mistake. However, the subjective and unmanifested intention of the contractor to reserve the

claim could not avoid the general effect of the release. In the case at bar, plaintiff says that it did not read the release as excepting claims of which DOE was aware—an intent manifestly at odds with the terms of the release.

This case is much like *Clark Mechanical*, 5 Cl.Ct. at 84. After having been advised of its appeal rights following denial of its claims (unlike this case), a letter dated one day after the decision letter forwarded the contractor a release form. The contractor executed the release with the view that it applied to claims not known to the Government (as in this case) or that were not in some stage of litigation at the time. The contractor asserted that it was misled by the fact that the government sent the form without being requested to do so (as argued in this case) and by the threat of withholding money due if the release was not signed (as argued in this case in respect of releasing the letter of credit). The release provided that all excepted claims must be listed (as in this case). The contractor was bound by the release.

This court has held that the CDA's notice requirements do not affect an otherwise valid release. Therefore, plaintiff's intent is not in issue. If intent were in issue, plaintiff takes the position that determination of intent is improper on summary judgment. *KangaROOS U.S.A., Inc. v. Caldor, Inc.*, 778 F.2d 1571, 1576 (Fed.Cir. 1985), instructs that "[i]ntent to deceive or mislead is a factual issue that, if contested is not readily determined within the confines of Fed. R.Civ.P. 56...." (citations omitted). Defendant does not put plaintiff's intent in issue—plaintiff does; and plaintiff's affiant has not raised a genuine issue as to his intent. The one case plaintiff offers, *Colonial Navigation Co. v. United States*, 149 Ct.Cl. 242, 181 F.Supp. 237 (1960), denied summary judgment based primarily on the Government's failure to demonstrate as the proponent of summary judgment that plaintiff's claims were covered by a release, as well as on the basis of plaintiff's averments of facts showing that the parties, by their conduct, had excepted the claims from the release. Plaintiff cannot defeat defendant's motion without going behind the release and has not averred facts that any court has recognized as calling into question intent of the releasing party in executing an unequivocal release of all its claims.

**504**

on releases ensures. Indeed, the Government would not know what claims a contractor was pursuing under the CDA until the sufficiency of the contracting officer's decision letter was adjudicated. The policy underlying the requirement that the Government give notice of rights under the CDA for claims that the contractor has chosen to pursue does not call for such a draconian and senseless result.

### CONCLUSION

Based on the foregoing, defendant's motion for summary judgment is granted, and the Clerk of the Court shall dismiss the complaint.

IT IS SO ORDERED.