**KVAAS CONSTRUCTION COMPANY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 90–266C.**

United States Claims Court.

April 8, 1991.

Richard D. Corona, San Diego, Cal., for plaintiff.

Samuel C. Watkins, Washington, D.C., with whom were Asst. Atty. Gen. Stuart M. Gerson, David M. Cohen, and Sharon Y. Eubanks, for defendant.

## OPINION

BRUGGINK, Judge.

Pending in this action brought under the Contract Disputes Act, 41 U.S.C. §§ 601–613 (1988) ("CDA"), is defendant's motion to dismiss for lack of subject matter jurisdiction. Defendant contends that the submissions upon which jurisdiction is premised do not constitute claims under the CDA. For the reasons which follow, the court disagrees. The motion is thus due to be denied.

## BACKGROUND

The contract at issue was entered into between plaintiff, Kvaas Construction Company ("Kvaas") and the Department of the Navy for the construction of a ten-story Bachelor Officer Quarters at the Naval Amphibious Base in Coronado, California. The contract was awarded on March 31, 1987. The electrical work was subcontracted to Arcon Electric, Ltd. Sometime in 1987 Arcon wrote Kvaas that it perceived a conflict between the contract specifications and contract drawings with respect to whether certain conduits had to be encased in concrete. Apparently the Resident Officer in Charge of Construction ("ROICC") directed in writing that the conduit be encased. In a letter dated August 20, 1987, Kvaas wrote the Navy advising that Arcon was considering submitting a claim for additional costs associated with that work.

Arcon wrote Kvaas on March 26, 1988 claiming an additional $33,807.37 as well as entitlement to a time extension to compensate for delay. Apparently installation of the encased conduit had not occurred at that time. On June 14, 1988 Lawrence F. Bolin, the Project Manager for Kvaas, wrote the ROICC. He represented that a "quotation was submitted to the Navy on January 25, 1988, but we are unable to confirm this.... The following proposal is submitted under the premise that you have not previously received it." The letter goes on to propose completing the "designated changes" for an increase in contract price of $38,284 and an increase of contract time of 30 calendar days. The letter closes with the following language: "Please note that if this proposal is rejected it is the intent of Arcon Electric and Kvaas Construction Company to request a Contracting Officer's decision." Attached was a detailed breakdown of proposed costs.

The Assistant ROICC responded on July 29, 1988, reciting that Kvaas' "June 14, 1988 change request # 12 for the conduit encasement with concrete is denied," because the Navy viewed the drawings and specifications as consistent. He went on to instruct that "If you disagree with this determination, you may request a decision of the Contracting Officer pursuant to the provisions of the disputes clause of your contract. *Such requests should be forwarded via this office....* This letter is not a Final Decision of the Contracting Officer." (Emphasis supplied.)

On January 5, 1989 the President of Kvaas wrote the following letter to the ROICC:

Our electrical subcontractor has taken issue with your decision on Change Request No. 12 that was declined by your letter of 23 July 1988, Serial 20829.

We enclose our subcontractor's protest of your decision under Attorney Richard D. Corona's letterhead. Our subcontractor's position is fully detailed in the enclosed letter dated December 28, 1988.

In conformance with the contract and under the terms of the Contract Disputes

Act, we respectfully request the final decision of the Contracting Officer within sixty days as required by the Act.

Attached was a four-page letter from attorney Corona to Kvaas explaining Arcon's position that it was entitled to additional time and compensation. The letter provides ample detail as to the rationale of the claim but makes no explicit statement of the amount sought. Instead, it refers to the claims as not exceeding $50,000. The Corona letter does state, however, that it is in response to the Navy's letter of July 29, 1988.*

The Contracting Officer issued a final decision on April 17, 1989 denying Kvaas' claim. Subsequently, plaintiff brought suit here for $33,807.37, plus CDA interest.

## DISCUSSION

 In a motion reminiscent of those filed under common law pleading rules, defendant contends that what would otherwise appear to be a straightforward claim brought under the CDA is in fact fatally defective for either of two reasons. The defendant argues first that the Contracting Officer never should have acted on the January 5, 1989 letter because, although he plainly received it, the letter was addressed to the ROICC. This despite the fact that the Assistant ROICC specifically instructed the contractor to submit claims to the ROICC. The Contracting Officer was reading someone else's mail. This sort of shell game is unconscionable. Any colorable legal argument in support of it was recently rejected by the Federal Circuit in *Dawco Constr., Inc. v. United States*, 930 F.2d 872, 879–80 (Fed.Cir.1991). *See also Lakeview Constr. Co. v. United States*, 21 Cl.Ct. 269, 276 (1990); *American Pacific Roofing Co. v. United States*, 21 Cl.Ct. 265, 268 (1990).

Defendant's second argument is equally specious. The Government admits that the Kvaas letter of January 5, 1989 "did request a CO's final decision." The

Government contends that as a matter of form, however, the letter cannot in fact be a claim under the CDA because it "failed to indicate the specific amount sought from the Navy." The amount of the claim never was a relevant concern to the Contracting Officer, of course, because the claim was rejected on the merits. Nevertheless, the Contracting Officer apparently had no difficulty discerning the correspondence as "[Kvaas'] claim for equitable adjustment of subject contract in the amount of $38,-284.00 and a 30–day time extension." It required no great intuition for the Contracting Officer to come to that conclusion. There was a logical progression between the June 14, 1988 cost proposal, the July 29, 1988 rejection of the proposal, the December 28, 1988 Corona letter, and the January 5, 1989 claim. Each letter makes reference to preceding letters. In *Contract Cleaning Maintenance, Inc. v. United States*, 811 F.2d 586, 592 (Fed.Cir.1987), the court considered collectively a series of letters to find that a claim was asserted, rejecting a contention that the precise form of a claim is critical. *See also United States v. General Elec. Corp.*, 727 F.2d 1567, 1569 (Fed.Cir.1984) (court found document with attachments submitted by contractor to Contracting Officer was in substantial compliance with CDA); *Alliance Oil & Ref. Co. v. United States*, 13 Cl.Ct. 496, 499 (1987) (court found that a written protest, followed by letters protesting payment pursuant to two invoices, which together sought "adjustment of contract" or "other relief" in form of refunds, gave Contracting Officer notice of claim). The result here should be the same.

## CONCLUSION

The motion to dismiss is denied. Defendant will file its answer pursuant to the RUSCC.

---

\* Corona's letter refers to a Navy letter of "23 July 1988, Serial 20829." The date stamp on the July 29 letter is very faint and could be misconstrued as dated July 23. The letter's serial number is also blur~ed, but appears to be 20829.