ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - | ) |
| | ) |
| Sauer Construction, LLC | ) ASBCA No. 63738 |
| | ) |
| Under Contract No. W91278-12-D-0039 | ) |

APPEARANCES FOR THE APPELLANT: Andrew P. Atkins, Esq.
Braden Rose, Esq.
  Smith, Anderson, Blount, Dorsett,
    Mitchell & Jernigan, LLP
  Raleigh, NC

APPEARANCES FOR THE GOVERNMENT: Michael P. Goodman, Esq.
  Engineer Chief Trial Attorney
Paul B. Taylor, Esq.
Justin P. McCorcle, Esq.
  Engineer Trial Attorneys
  U.S. Army Engineer District, Wilmington

OPINION BY ADMINISTRATIVE JUDGE SWEET
ON THE GOVERNMENT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT

This appeal involves a contract between the appellant, Sauer Construction, LLC (Sauer), and the government to construct a training command building at Fort Liberty (formerly Fort Bragg), North Carolina (compl. ¶ 2). Sauer filed a claim for various alleged changes and delays—including delays due to rust remediation. After the contracting officer denied that claim, Sauer filed this appeal. (Compl. at 7-13) On August 12, 2024, the government filed a motion for partial summary judgment (motion), seeking judgment as a matter of law on the rust remediation claims[1] on the grounds that releases bar those claims (gov't mot. 1-2). We deny the motion because the releases are, at best for the government, ambiguous as to whether they bar the rust remediation claims, and Sauer has presented sufficient evidence upon which a reasonable fact-finder, drawing all reasonable inferences in favor of Sauer and applying the applicable evidentiary standard, could decide that the parties did not intend that the releases bar the rust remediation claims.

---

[1] In particular, the government seeks summary judgment on the complaint's claims for relief (1) through (6), and (8) (gov't mot. at 1).

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. On September 7, 2012, the United States Army Corps of Engineers, Mobile District (government) awarded Sauer Contract No. W91278-12-D-0039 (Contract), an indefinite delivery, indefinite quantity multiple award task order contract to support the Mobile District military program for the Gulf Coast region (R4, tab 3-1 at 58-59).[2]

2. On September 28, 2016, the government awarded Sauer Task Order DQ02 (Task Order) to construct a special operations forces training command headquarters building at Fort Liberty (then known as Fort Bragg), North Carolina (R4, tab 3-2 at 84-85).

3. The government issued the notice to proceed on February 21, 2017 (R4, tab 3-3 at 118).

4. On May 5, 2017, Sauer sent the government Serial Letter S-0001, which raised concerns about the steel design for the project (R4, tab 6-1 at 1352-53).

5. The government responded by issuing Requests for Proposal 31 (CS037-Metal Truss Changes).[3] The Requests for Proposal 31 sought a proposal to add bracing between the split roof system, to revise diaphragm loading, and to revise the metal truss system, and to make associated corrections. (R4, tab 3-7 at 150; SUMF ¶ 10; RSUMF ¶ 10; compl. ¶ 9)[4]

6. On February 27, 2019, the government sent Sauer a partial suspension letter, suspending work impacted by the Requests for Proposal 31 (R4, tab 3-7.1 at 155). On July 12, 2019, the government unilaterally issued Modification No. 19, which partially suspended work (R4, tab 3-8 at 160).

7. On August 13, 2019, Sauer submitted its proposal in response to the Requests for Proposal 31 (Proposal 31), which requested $4,496,542 and 483 calendar days (R4, tab 3-9 at 162). Proposal 31 stated that:

---

[2] The Mobile District subsequently transferred capacity under the contract to the Wilmington District (R4, tab 3-1.1 at 76-77).

[3] The government issued an initial Request for Proposal 31 on February 8, 2019, and a revised Request for Proposal 31 on April 16, 2019 (R4, tab 3-7, at 150; tab 3-7.2 at 156). We refer to the initial Request for Proposal 31 and the revised Request for Proposal 31 collectively as the Requests for Proposal 31.

[4] "SUMF" refers to the government's statement of undisputed material fact. "RSUMF" refers to appellant's response to the SUMF.

Sauer and its Subcontractors are concerned with how to address equipment warranty, equipment maintenance, and the protection of equipment/installed materials in an unconditioned building over the Suspension Period. Additionally, Subcontractors have placed notice of inability to identify rising material and labor costs over the Suspension period, and placed notice of intent to submit Requests for Equitable Adjustments for Eichleay (for which Notice was previously provided to the Government and is contained herein.) Likewise, Sauer reserves its right to submit a Request for Equitable Adjustment for Eichleay damages as well.

Though the intent to cover all cost impacts has been attempted within the attached, it is likely that unforeseen additional costs or changes in the attached could arise and as such, Sauer reserves all rights to revisit this proposal at the time the [notice to proceed] is actually provided.

(*Id.* at 163)

8. On August 19, 2019, the government issued Request for Proposal 39 (CS045 Structural ITR Design Revisions (AES)) (Request for Proposal 39), which was for revisions to the existing structural steel—including beams, columns, and studs—revisions to existing concrete masonry units, and revisions to metal truss bracing (R4, tab 3-10 at 351, 353).

9. On October 17, 2019, Sauer submitted its proposal in response to Request for Proposal 39 (Proposal 39, collectively with Proposal 31, Proposals), which requested $2,141,546.34 and a 118-day time extension (R4, tab 3-11 at 355). Similar to Proposal 31, Proposal 39 stated that:

As mentioned in our previously submitted proposal for [Request for Proposal] 31, some subcontractors have placed notice of intent to submit Requests for Equitable Adjustments for Eichleay (for which Notice was previously provided to the Government). Likewise, Sauer reserves its right to submit a Request for Equitable Adjustment for Eichleay damages as well. Furthermore, the concerns regarding equipment warranty, equipment maintenance and the protection of installed equipment/materials in an unconditioned space remain;

3

since no consideration or allowances have been made these will need to be addressed sometime in the future.

Though the intent to cover all cost impacts has been attempted within the attached, it is possible that unforeseen additional costs or changes in the attached could arise and as such, Sauer reserves all rights to revisit this proposal at the time the [notice to proceed] is actually provided.

(*Id.* at 355-56)

10. On October 18, 2019, the government and Sauer signed Bilateral Modification No. 20, addressing Proposal 31. Modification No. 20 increased the contract price by $4,496,452, and extended the contract performance time by 483 calendar days for metal truss changes, including, but not limited to, adding bracing between the split roof system, revising diaphragm loading, revising roof deck fastening patterns, and making associated corrections (Metal Truss Changes). (R4, tab 3-12 at 416-17, 424-25)

11. On October 23, 2019, the government and Sauer signed Bilateral Modification No. 21, addressing Proposal 39 (collectively with Modification No. 20, Modifications). Modification No. 21 increased the contract price by $2,141,547, and extended the contract performance time by 56 calendar days for CS045 Structural [Inspection Test Report] Design Revisions (AES), including, but not limited to, making changes to the existing structural steel—including beams, columns, studs; revising existing concrete masonry units; revising metal truss bracing; and replacing exterior sheathing board (Structural Steel Changes) (R4, tab 3-13 at 427-28, 436-37).

12. The Modifications contained identical releases (Releases), stating that:

It is further understood and agreed that this adjustment constitutes compensation in full on behalf of the Contractor and its subcontractors and suppliers for all costs and markup directly or indirectly attributable to the change ordered, for all delays related thereto, for performance of the change within the time frame stated, for interest under the Contract Disputes Act, and for attorney fees under the Equal Access to Justice Act.

(R4, tab 3-12 at 426; tab 3-13 at 437)

13. Around the time of the Modifications, the government issued the notices to proceed (Notices to Proceed), lifting the partial suspension (SUMF ¶ 27; RSUMF

¶ 28; compl. ¶ 20; R4, tab 4-1 at 440; tab 5-1 at 491-92; tab 6-25 at 1542; tab 6-26 at 1543-44; tab 6-27 at 1545-46; tab 6-28 at 1547-48).

14. Some equipment and material rusted due to its exposure to the elements during the partial suspension (R4, tab 5-3 at 507; compl. ¶ 21).

15. However, according to an affidavit submitted by Michael McVinney, Sauer's project manager, "[e]xcept with respect to certain rusted door frames, which were identified prior to the stop work order, the nature and extent of rust and corrosion materials and equipment were not apparent" at the time that the government issued the notice to proceed, the government lifted the suspension of work, and Sauer began work—all in October, 2019 (McVinney aff. ¶¶ 17-19 (app. resp., ex. 1)).

16. Rather, according to Mr. McVinney, Sauer first identified the nature and extent of the rust and corrosion on or about August 31, 2020 (McVinney aff. ¶ 20).

17. On September 9, 2020, the government issued ten deficiency notices to Sauer regarding the rusted equipment and materials (SUMF ¶ 31; RSUMF ¶ 31; R4, tab 5-8 at 1348-49).

18. Beginning on October 6, 2020, Sauer sought additional costs and time to remediate the rust (R4, tab 5-2 at 506).

19. On February 21, 2023, Sauer filed a certified claim (R4, tab 4-1 at 438-78). The claim included, but was not limited to, a claim for rust remediation impacts resulting from the exposure of material and equipment to the elements during the suspension of work while Sauer addressed the structural steel design defects (Rust Remediation Claims) (*id.* at 438-40).

20. The contracting officer issued a final decision denying the claim on July 21, 2023 (R4, tab 2 at 32-57).

21. This appeal followed.

DECISION

The motion is denied because there is a genuine issue of material fact as to whether the Releases bar the Rust Remediation Claims.

I.   Summary Judgment Standard

We will grant summary judgment only if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  All significant doubt over factual issues must be resolved in favor of the party opposing summary judgment.  *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390-91 (Fed. Cir. 1987).  In deciding summary judgment motions, we do not resolve controversies, weigh evidence, or make credibility determinations.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Moreover, we draw all reasonable inferences in favor of the non-movant.  *Id.*  A genuine issue of material fact arises when the non-movant presents sufficient evidence upon which a reasonable fact-finder, drawing the requisite inferences and applying the applicable evidentiary standard, could decide the issue in favor of the non-movant.  *C. Sanchez & Son, Inc. v. United States*, 6 F.3d 1539, 1541 (Fed. Cir. 1993).

II.  There Is a Genuine Issue of Material Fact as to Whether the Releases Bar the Rust Remediation Claims

There is a genuine issue of material fact as to whether the Releases bar the Rust Remediation Claims.  A "release is contractual in nature and must be interpreted in the same manner as any other contract term or provision."  *Korte-Fusco Joint Venture*, ASBCA No. 59767, 15-1 BCA ¶ 36,158 at 176,455 (citing *Bell BCI Co. v. United States*, 570 F.3d 1337, 1341 (Fed. Cir. 2009)).  Thus, to resolve a dispute about the scope of a release, we must first examine whether the release is ambiguous.  *Korte-Fusco*, 15-1 BCA ¶ 36,158 at 176,455.  A contract is ambiguous if it is susceptible to more than one reasonable interpretation.  *E.L. Hamm & Assoc., Inc. v. England*, 379 F.3d 1334, 1341 (Fed. Cir. 2004).  If the terms are unambiguous, we cannot consider extrinsic evidence.  *Korte-Fusco*, 15-1 BCA ¶ 36,158 at 176,455 (citing *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1435 (Fed. Cir. 1996)).  However, if the terms are ambiguous, we may consider extrinsic evidence, which generally renders the dispute not amenable to summary judgment.  *Id.* (citing *Beta Sys., Inc. v. United States*, 838 F.2d 1179, 1183 (Fed. Cir. 1988)).

Language in a release indicating that a modification "constitutes compensation in full . . . for all costs and markups directly or indirectly attributable for the change ordered, for all delays related thereto" suggests that the release is only for the particular change ordered, and is not a more general release.  *Korte-Fusco*, 15-1 BCA ¶ 36,158 at 176,455.  Thus, in *CKY, Inc.*, we held that a similar release was only for the change ordered—namely the addition of drainage to direct water flowing from undisclosed culverts to a new culvert—and did not cover claims for work the contractor performed to mitigate damage caused by the undisclosed culverts prior to the change orders.  *CKY, Inc.*, ASBCA No. 60451, 20-1 BCA ¶ 37,575 at 182,452, 182,455-56.

Here, there is a genuine issue of material fact as to whether the Releases bar the Rust Remediation Claims because the Releases are, at best for the government,

6

ambiguous as to whether they bar the Rust Remediation Claims, and Sauer has presented sufficient evidence upon which a reasonable fact-finder, drawing all reasonable inferences in favor of Sauer and applying the applicable evidentiary standard, could decide that the parties did not intend that the Releases bar the Rust Remediation Claims.

A. The Releases Are, at Best for the Government, Ambiguous as to Whether They Bar the Rust Remediation Claims

First, the Releases are, at best for the government, ambiguous as to whether they bar the Rust Remediation Claims. Similar to the releases in *Korte-Fusco* and *CKY*, the Releases stated that:

> It is further understood and agreed that this adjustment constitutes compensation in full on behalf of the Contractor and its subcontractors and suppliers for all costs and markup directly or indirectly attributable to the change ordered, for all delays related thereto, for performance of the change within the time frame stated[.]

(SOF ¶ 12); *see also Korte-Fusco*, 15-1 BCA ¶ 36,158 at 176,455; *CKY*, 20-1 BCA ¶ 37,575 at 182,452, 182,455-56. Therefore, as in *Korte-Fusco* and *CKY*, the Releases were only for the particular change ordered. *See Korte-Fusco*, 15-1 BCA ¶ 36,158 at 176,455; *CKY*, 20-1 BCA ¶ 37,575 at 182,452, 182,455-56. It is reasonable to interpret the changes ordered in the Modifications as not including the rust remediation because the only changes identified in the Modifications are the Metal Truss Changes and Structural Steel Changes, without any mention of the rust remediation (SOF ¶¶ 10-12). Therefore, at best for the government, the Releases are ambiguous as to whether they bar the Rust Remediation Claims. *See Korte-Fusco*, 15-1 BCA ¶ 36,158 at 176,455; *CKY*, 20-1 BCA ¶ 37,575 at 182,452, 182,455-56.

B. Turning to Extrinsic Evidence, There Is a Genuine Issue of Material Fact as to Whether the Parties Intended That the Releases Bar the Rust Remediation Claims

Because the Releases are, at best for the government, ambiguous as to whether they bar the Rust Remediation Claims, we turn to extrinsic evidence to determine the intent of the parties. *See Beta Sys.*, 838 F.2d at 1183; *Korte-Fusco*, 15-1 BCA ¶ 36,158 at 176,455. Looking at extrinsic evidence, there is a genuine issue of material fact as to whether the parties intended that the Releases bar the Rust Remediation Claims because Sauer has presented sufficient evidence upon which a reasonable fact-finder, drawing all reasonable inferences in favor of Sauer and applying the applicable evidentiary standard, could decide that the parties did not

7

know of the Rust Remediation Claims at the time they executed the Releases. We have recognized that, absent unambiguous language to the contrary, *Campbell Indus.*, ASBCA No. 38688, 93-3 BCA ¶ 26,165 at 130,068—which is lacking here (SOF ¶ 12)—it is reasonable to infer that the parties did not intend to release claims wholly unknown to the parties at the time that they executed a release. *See ECC Int'l, LLC*, ASBCA No. 60167, 2023 WL 3949878 (May 9, 2023); *Martin Edwards & Assocs., Inc.*, ASBCA No. 57718, 12-2 BCA ¶ 35,058 at 172,210 (citing *Alliance Oil & Refining Co. v. United States*, 13 Cl. Ct. 496, 502 (1987), *aff'd*, 856 F.2d 201 (Fed. Cir. 1988)); *Inland Empire Builders, Inc.*, ASBCA No. 8077, 67-1 BCA ¶ 6,162 at 28,560; *ECC Int'l, LLC*, ASBCA No. 60167, 2023 WL 3949878 (May 9, 2023). A contractor knows of a claim for purposes of releasing that claim if it knows of the specific facts supporting that claim beyond a general awareness that there are problems. *See Martin Edwards*, 12-2 BCA ¶ 35,058 at 172,210 (citing *Alliance Oil*, 13 Cl. Ct. at 502); *Fed. Electric Corp.*, ASBCA No. 13030 69-2 BCA ¶ 7,792 at 36,169.

Here, Sauer has presented sufficient evidence—namely the Proposals and the McVinney Affidavit—upon which a reasonable fact-finder, drawing all reasonable inferences in favor of Sauer and applying the applicable evidentiary standard, could decide that the parties did not know of the specific facts supporting the Rust Remediation Claims at the time that they executed the Releases. First, after identifying concerns about "equipment maintenance[] and the protection of equipment/installed materials in an unconditioned" building over the suspension period, the Proposals stated that it was possible or likely "that **unforeseen additional costs** or changes in the attached could arise and as such, Sauer reserves all rights to revisit this proposal at the time the [notice to proceed] is actually provided" (SOF ¶¶ 7, 9) (emphasis added). A reasonable fact-finder could read the "unforeseen additional costs" referred to in the Proposals as including the previously-discussed costs related to the protection and maintenance of equipment and materials in an unconditioned building over the suspension period because those costs are among the costs discussed immediately prior to the reference to "unforeseen additional costs" (SOF ¶¶ 7, 9). Moreover, the modifier "unforeseen" indicates that the additional costs were not known in advance. *See* Webster's Encyclopedic Unabridged Dictionary, 460, 750, 2052 (1996). Therefore, a reasonable fact-finder, drawing all reasonable inferences in favor of Sauer, could read the Proposals as indicating that Sauer did not know of the specific facts supporting its Rust Remediation Claims—namely whether there would be additional costs arising from storing equipment and materials in an unconditioned building over the suspension period.

The McVinney Affidavit also raises a genuine issue of material fact as to whether Sauer knew of the specific facts supporting its Rust Remediation Claims at the time the parties executed the Releases. A reasonable fact-finder could decide based upon the McVinney Affidavit that Sauer did not know of the specific facts

supporting its Rust Remediation Claims at the time of the Releases because Mr. McVinney declares that "[e]xcept with respect to certain rusted door frames, which were identified prior to the stop work order, the nature and extent of rust and corrosion materials and equipment were not apparent" at the time of the Notices to Proceed and the Releases in October, 2019 (SOF ¶ 15). Rather, according to Mr. McVinney, Sauer first identified the nature and extent of the rust and corrosion on or about August 31, 2020 (SOF ¶ 16).

Because Sauer has presented sufficient evidence upon which a reasonable fact-finder, drawing all reasonable inferences in favor of Sauer and applying the applicable evidentiary standard, could decide that the parties did not know of the specific facts supporting the Rust Remediation Claims at the time they executed the Releases, there is a genuine issue of material fact as to whether the parties intended that the ambiguous Releases bar the Rust Remediation Claims. *See ECC Int'l*, 2023 WL 3949878; *Martin Edwards*, 12-2 BCA ¶ 35,058 at 172,210; *Inland Empire Builders*, 67-1 BCA ¶ 6,162 at 28,560.[5]

III. The Government's Arguments to the Contrary Are Meritless

None of the government's arguments to the contrary have merit. The government first argues that we may not rely upon extrinsic, or parol, evidence to modify the unambiguous language of the Releases (gov't mot. 14-15; gov't reply 4-8). However, we may rely upon extrinsic evidence when a contract is ambiguous. *See Nova Group/Tutor-Saliba v. United States*, 87 F.4th 1375, 1379 (Fed. Cir. 2023). As discussed above, the Releases are, at best for the government, ambiguous. Therefore, we may turn to extrinsic evidence.

The government also argues that, by acknowledging that Sauer knew that there could be rust remediation costs that were unknown at the time of the Reservations, the Proposals demonstrate Sauer's knowledge of the Rust Remediation Claims (gov't reply at 4-5). However, that acknowledgement merely constitutes a recognition of a "known unknown" potential claim. "As we know there are known knowns. There are

_____

[5] Whether Sauers knew of the Rust Remediation Claims at the time of the Releases—and whether the parties intended the Releases to bar the Rust Remediation Claims more broadly—will have to await a factual determination after a hearing. For purposes of deciding the government's summary judgment motion, it is sufficient to conclude as we do that Sauer has presented sufficient evidence upon which a reasonable fact-finder, drawing all reasonable inferences in favor of Sauer and applying the applicable evidentiary standard, could decide that Sauer did not have knowledge of the Rust Remediation Claims at the time of the Releases, such that there is a genuine issue of material fact as to whether the parties intended that the Releases bar the Rust Remediation Claims.

things we know we know.  We also know there are known unknowns.  That is to say we know there are some things we do not know.  But there are also unknown unknowns, the ones we don't know we don't know." *Citizens for Responsibility & Ethics in Washington v. Dept. of Educ.*, 538 F. Supp. 2d 24, 30 n.4 (D.D.C. 2008) (quoting Donald Rumsfeld, Secretary of Defense, United States Department of Defense News Briefing (Oct. 17, 2002), http://www.globalsecurity.org/military/ library/news/2002/10/mil-021017-usia01.htm).  An ambiguous release cannot be read to comprehend such a known unknown potential claim because the specific facts supporting such an inchoate claim are not known at the time of that release.  *See Martin Edwards*, 12-2 BCA ¶ 35,058 at 172,210.  At most, acknowledgement of a known unknown potential claim constitutes a general awareness that there might be problems in the future, which is insufficient to establish knowledge of a claim for purposes of establishing that a release is intended to comprehend that claim.  *See Fed. Electric Corp.*, 69-2 BCA ¶ 7,792 at 36,169.

Nor could the government argue that the Proposals merely show that Sauer lacked knowledge of the specific facts supporting the Rust Remediation Claims at the time of the Proposals—as opposed to at the time of the Releases.  It is reasonable to infer from the fact that Sauer did not know of the specific facts supporting its Rust Remediation Claims at the time of the Proposals that it did not know of those facts at the time of the Releases because the government has pointed to no evidence suggesting that Sauer learned of the specific facts supporting its Rust Remediation Claims between the Proposals and the Releases (*see* gov't reply).  Likewise, it cannot be argued that the fact that the Reservations reserved Sauer's rights to revisit the Proposals only until the government provided the Notices to Proceed—which roughly coincided with the Modifications' Releases (SOF ¶ 13)—conclusively establishes that Sauers knew of the Rust Remediation Claims at the time of the Releases.  Whether that is a reasonable inference, it would not be the only reasonable inference that can be drawn from the Reservations.  A reasonable fact-finder could infer that the Reservations merely reflected that Sauer thought, predicted, or hoped at the time of the Reservations that it would learn of any rust remediation costs that were unknown at the time of the Reservations by the time of the Notices to Proceed and the Releases; that what Sauer though, predicted, or hoped that it would learn by the time of the Notices to Proceed and the Releases turned out to be inaccurate; and thus that Sauer did not have knowledge of the rust remediation costs at the time of the Notices to Proceed and the Releases.

In sum, the government's arguments are meritless, and there is a genuine issue of material fact as to whether the Releases bar the Rust Remediation Claims.

CONCLUSION

For the foregoing reasons, the government's motion for partial summary judgment is denied.

Dated: January 30, 2025

JAMES R. SWEET
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

I concur

OWEN C. WILSON
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 63738, Appeal of Sauer Construction, LLC, rendered in conformance with the Board's Charter.

Dated: January 30, 2025

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

11